## HOUSE *v.* MAYES, MARSHAL OF JACKSON COUNTY, MISSOURI.

### ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

No. 597.　Argued December 13, 14, 1910.—Decided January 9, 1911.

The following fundamental principles are not open to dispute:

The Government created by the Federal Constitution is one of enumerated powers, and cannot by any of its agencies exercise an authority not granted by that instrument either expressly or by necessary implication.

A power may be implied when necessary to give effect to a power expressly granted.

While the Constitution of the United States and the laws enacted in pursuance thereof, together with treaties made under the authority of the United States, constitute the supreme law of the land, a State may exercise all such governmental authority as is consistent with its own, and not in conflict with the Federal Constitution.

The police power of the State, never having been surrendered by it to the Federal Government, is not granted by or derived from, but exists independently of, the Federal Constitution.

One of the powers never surrendered by, and therefore remaining with, the State is to so regulate the relative rights and duties of all within its jurisdiction as to guard the public morals, safety and health, as well as to promote the public convenience and the common good.

It is within the power of the State to devise the means to be employed to the above ends provided they do not go beyond the necessities of the case, have some real and substantial relation to the object to be accomplished, and do not conflict with the Constitution of the United States.

A State may enact a regulation as to sale and delivery of a commodity by actual weight and prohibit arbitrary deductions under rules of associations, without depriving the members of such associations of their liberty of contract or of their property without due process of law.

The State may, without violating the due process clause of the Fourteenth Amendment, regulate the conduct of boards of trade or exchanges which have close and constant relations with the general public, by such means as are not arbitrary or unreasonable. Such regulations are not interferences with liberty of contract beyond the police power of the State to protect the public and promote the general welfare.

The statute of Missouri of June 8, 1909, to prevent fraud in the purchase and sale of grain and other commodities and which prohibits arbitrary deductions from actual weight or measure thereof under custom or rules of boards of trade, is a valid exercise of the police power of the State and is not unconstitutional as a deprivation of property, interference with liberty of contract, or denial of equal protection of the law.

227 Missouri, 617, affirmed.

THE facts, which involve the constitutionality of an act of the State of Missouri to prevent fraud in the purchase and sale of grain and other commodities, are stated in the opinion.

*Mr. Frank Hagerman*, with whom *Mr. Kimbrough Stone* was on the brief, for plaintiff in error:

The act denies to plaintiff in error the right to contract. Under the Fourteenth Amendment, freedom of contract is guaranteed. *Allgeyer* v. *Louisiana*, 165 U. S. 578, 589; *Holden* v. *Hardy*, 169 U. S. 366, 390; *Lochner* v. *New York*, 198 U. S. 45, 53; *Adair* v. *United States*, 208 U. S. 161, 172.

While freedom of contract must yield to the police

power of the State, there is a limit to the exercise of that power. In the end the court must decide the question. *Mugler* v. *Kansas City*, 123 U. S. 623, 661; *State* v. *Tie Co.*, 181 Missouri, 536, 559; *State* v. *Cantwell*, 179 Missouri, 245, 263; *State.* v. *Loomis*, 115 Missouri, 307, 316. There must be some reasonable grounds for the legislative interference, or it cannot be justified. *Bonnett* v. *Vallier*, 136 Wisconsin, 193, 203; *State* v. *Redmon*, 134 Wisconsin, 89, 110; *Harding* v. *People*, 160 Illinois, 459.

On the ground of unreasonable interference with the liberty of contract, the courts have condemned legislative acts prescribing maximum hours of labor, *Lochner* v. *New York*, 198 U. S. 45; making unlawful contracts of employment forbidding membership in labor unions, *State* v. *Julow*, 129 Missouri, 163; *People* v. *Marcys*, 189 N. Y. 257; *Gillespie* v. *People*, 188 Illinois, 176; *Coffeyville B. & T. Co.* v. *Perry*, 69 Kansas, 297; *State* v. *Bateman*, 7 Ohio N. P. 487; *Zillmer* v. *Kreutzberg*, 114 Wisconsin, 530; *Goldfield Mines Co.* v. *Miners' Union*, 159 Fed. Rep. 500; requiring stipulations in contracts for public work that none but union labor be employed, *Atlanta* v. *Stein*, 111 Georgia, 789; *Marshall Co.* v. *Nashville,* 109 Tennessee, 495; *Adams* v. *Brennan*, 177 Illinois, 194; *Holden* v. *Alton*, 179 Illinois, 318; *Fiske* v. *People*, 188 Illinois, 206; *Furniture Co.* v. *Toole*, 26 Montana, 22; *Lewis* v. *Board of Education*, 139 Michigan, 306; *Rodgers* v. *Coler*, 166 N. Y. 1, 59; making it criminal to discharge an employé because he is a member of a labor organization, *Adair* v. *United States*, 208 U. S. 161; requiring contractors to pay certain minimum wages, *Street* v. *Electrical Supply Co.*, 160 Indiana, 338; *State* v. *Norton*, 5 Ohio N. P. 183; regulating the time of payment of wages in defiance of contract, *Leep* v. *Railway Co.*, 58 Arkansas, 407; *Braceville Coal Co.* v. *People*, 147 Illinois, 66; *Railway Co.* v. *Wilson* (Tex.), 19 S. W. Rep. 910; *Republic I. & S. Co.* v. *State*, 160 Indiana, 379; *Commonwealth* v.

*Isenburg,* 4 Pa. Dist. R. 579; *Bauer* v. *Reynolds,* 3 Pa. Dist. R. 502; prohibiting payment of laborers otherwise than in money, *State* v. *Loomis,* 115 Missouri, 307; *State* v. *Goodwill,* 33 W. Va. 179; *Godcharles* v. *Wigeman,* 113 Pa. St. 431; *State* v. *Hann,* 61 Kansas, 146; *Jordan* v. *State,* 51 Tex. Crim. 531; *Avent Coal Co.* v. *Commonwealth,* 96 Kentucky, 218; prohibiting mine owners from dealing in supplies, provisions, etc., *Froer* v. *People,* 141 Illinois, 171; forbidding sale of supplies to employés at greater price than to others, *State* v. *Fire Creek Co.,* 33 W. Va. 118; forbidding deduction of wages because of defective work, *Commonwealth* v. *Perry,* 155 Massachusetts, 117; or for any reason except for actual cash advanced, *Kellyville Coal Co.* v. *Harrier,* 207 Illinois, 624; requiring employers to give discharged employés written reasons for discharge, *Wallace* v. *Railway Co.,* 94 Georgia, 732; *New York Ry. Co.* v. *Schaffer,* 65 Oh. St. 414; requiring a day's labor to consist of eight hours, *Low* v. *Rees Printing Co.,* 41 Nebraska, 127; requiring sleeping car companies, upon request of occupant of lower berth, to raise upper berth if not occupied, *State* v. *Redmon,* 134 Wisconsin, 89, 110; requiring all contractors for erection of buildings to give bond for benefit of material men, *Montague & Co.* v. *Furness,* 145 California, 205; forbidding cigar making in tenement houses, *In re Jacobs,* 98 N. Y. 98; regulating weight of loaves of bread, *Buffalo* v. *Collins Baking Co.,* 39 App. Div. (N. Y.) 432; giving state board power to refuse or grant nurseryman's license as it might think applicant financially responsible or not, *Hawley* v. *Nelson* (S. D.), 115 N. W. Rep. 93; requiring certain bonds to be secured by surety companies as sureties, *McKell* v. *Robins,* 71 Ohio, 273; prohibiting location of laundry without consent of certain property owners, *Ex parte Sing Lee,* 96 California, 354; *Laundry Ordinance Case,* 13 Fed. Rep. 229; or unless permitted by board of supervisors, *Yick Wo* v. *Hopkins,* 118 U. S. 373; requiring production of cer-

tificate showing payment of all taxes due before record-
ing conveyance of real estate, *Baldwin* v. *Moore*, 7 Wash-
ington, 173; forbidding sale of groceries and provisions
in same store where dry goods, clothing or drugs are sold,
*Chicago* v. *Nitcher*, 183 Illinois, 104; making gift of pre-
mium stamps with purchase a crime, *Appel* v. *Zimmer-
mann*, 102 App. Div. (N. Y.) 103; *Madden* v. *Dycker*, 72
App. Div. (N. Y.) 308; prohibiting selling of any article
upon inducement of a premium, *People* v. *Gillison*, 109
N Y. 397; requiring mine owners to provide scales for
weighing coal and to make the weight of coal the basis of
wages, *Millett* v. *People*, 117 Illinois, 294; *In re House Bill
No. 203*, 21 Colorado, 27; requiring payment for coal mined
to be based on coal before screened, *Ramsey* v. *People*, 142
Illinois, 380; *Re Preston*, 63 Oh. St. 428; *Whitebreast Fuel
Co.* v. *People*, 175 Illinois, 51; making it criminal to offer
real estate for sale without written authority, *Fisher Co.*
v. *Woods*, 187 N. Y. 90; putting onerous restrictions upon
keeping of private asylums for insane, *Ex parte Whit-
well*, 98 California, 73.

The Board of Trade was a voluntary association of
great service to the public and the alleged rule was but
a reasonable provision in a written contract between
plaintiff in error and others. *Tompkins* v. *Saffrey*, L. R.
3 App. Cas. 213, 228; *Moffatt* v. *Kansas City Board of
Trade*, 111 S. W. Rep. 894, 900; *Hopkins* v. *United States*,
171 U. S. 578, 597; *Nicol* v. *Ames*, 173 U. S. 509; *Greer* v.
*Stoller*, 77 Fed. Rep. 1; The Law and Customs of the Stock
Exchange by Melsheimer and Gardner (3d Ed., London,
1891), 98; *Clark* v. *Foss*, 7 Biss. 547, 555; Bisbee and Si-
mon's Exchanges, Preface VI.

The fact that a membership fee is charged, makes no
difference as to the rights of the parties. The association
owns no property, there is a mere membership, the fee
being paid as an aid to carry the expense of the organiza-
tion. The very definition of an exchange excludes the

idea of having property interests. *White* v. *Brownell,* 2 Daly, 329; *Leech* v. *Harris,* 2 Brewst. (Pa.) 571, 575; *In re Haebler,* 149 N. Y. 414, 428; *American Com. Co.* v. *Chicago Live Stock Exchange,* 143 Illinois, 210, 226; 23 Am. & Eng. Ency. of Law, 749; *Seymour* v. *Bridge,* 14 Q. B. Div. 460, 465; *Belton* v. *Hatch,* 109 N. Y. 593, 596; *Commercial Telegraph Co.* v. *Smith,* 47 Hun, 494, 505; *Board of Trade* v. *Nelson,* 162 Illinois, 431, 438; *People* v. *New York Commercial Association,* 18 Abb. Pr. 271, 279; *Vaughn* v. *Herndon,* 91 Tennessee, 64; *Evans* v. *Chamber of Commerce,* 86 Minnesota, 448; *People* v. *Chicago Board of Trade,* 80 Illinois, 134; *Metropolitan Grain Exchange* v. *Board of Trade,* 15 Fed. Rep. 847.

There is a vast difference between the rights of a member of a voluntary, unincorporated institution and those of a shareholder of a corporation. 1 Thompson on Corporations, § 846; Bacon on Benefit Societies, § 89; Niblack on Benefit Societies, §§ 22, 30, 73; *Kehenbeck* v. *Logeman,* 10 Daly (N. Y.), 447.

*Mr. Elliott W. Major,* Attorney General of the State of Missouri, with whom *Mr. John M. Atkinson* was on the brief, for defendant in error:

The legislature has the right to enact laws preventing and abolishing self-imposed rules of boards of trade which have been adopted as to, weights and measures; such legislation is within the police power of the State. The State can abolish any custom or usage among merchants or others as to what shall constitute the unit of weight. *Pittsburg Coal Co.* v. *Louisiana,* 156 U. S. 590.

The statute is leveled at rule 18, adopted by the Board of Trade, whereby it arbitrarily deducts from every car of grain one hundred pounds of its weight.

The deduction of the one hundred pounds, as made by the rule, is a fraud or trespass upon the rights of others. It is the duty of the State to prevent same, because the

action to recover is not adequate on account of the frequency and multiplicity of the acts.

The law is in the interest of fair dealing and common honesty. It prevents the taking of the property of the citizen by arbitrary rule without that "due process of law" about which plaintiff in error has said so much. *House* v. *Mayes,* 227 Missouri, 641; *McLean* v. *Arkansas,* 211 U. S. 550; Tiedeman, Police Power, § 89.

The public has such an interest in and is so affected by the dealing of boards of trade, that the legislature can control same.

Making the deduction of any amount from the actual weight of certain commodities by reason of any custom or rule of a board of trade a misdemeanor, as provided in the Missouri statute, is a valid exercise of the police power of the State.

The police power of a State embraces regulations designed to promote the public convenience or the general prosperity, as well as those to promote public health, morals or safety; it is not confined to the expression of what is offensive, disorderly or unsanitary, but extends to what is for the greatest welfare of the State. 30 Am. & Eng. Ency. Law (2d Ed.), 451; *People* v. *Wagner,* 86 Michigan, 599; *State* v. *Wilson,* 61 Kansas, 32; *Pittsburg Coal Co.* v. *Louisiana,* 156 U. S. 590; *Munn* v. *Illinois,* 94 U. S. 113; *Budd* v. *New York,* 143 U. S. 517; *Brass* v. *North Dakota,* 153 U. S. 391; Cooley on Const. Lim. (6th Ed.), 744; *Green* v. *Moffitt,* 22 Missouri, 529; *Evans* v. *Myers,* 25 Pa. St. 114; *Noble* v. *Durrell,* 3 T. R. 271; *St. Cross* v. *Howard,* 6 T. R. 338; *Mayes* v. *Jennings,* 4 Humph. (Tenn.) 102; *Harris* v. *Rutledge,* 19 Iowa, 388; Tiedeman's Police Power, § 89; 1 Bishop's New Criminal Law, § 234; *McLean* v. *Arkansas,* 211 U. S. 546, 550; *Williams* v. *Arkansas,* 217 U. S. 79; *New York* v. *Miln,* 11 Pet. 105; *Thurlow* v. *Massachusetts,* 5 How. 628; *Holden* v. *Hardy,* 169 U. S. 380; *Bacon* v. *Walker,* 204

U. S. 317; *Welch* v. *Swasey*, 214 U. S. 105; *C., B. & Q. Ry. Co.* v. *Drainage Com.*, 200 U. S. 592; *Gundling* v. *Chicago*, 177 U. S. 183; *Jacobson* v. *Massachusetts*, 197 U. S. 11.

The State, under its police power, has the right to prevent fraud generally, in any transaction, and especially in weights and measures of the commodities of life. Freund, Police Power; Tiedeman, Police Power, § 260.

MR. JUSTICE HARLAN delivered the opinion of the court.

The plaintiff in error was proceeded against by information filed in the Criminal Court of Jackson County, Missouri, under a statute of Missouri, which was passed June 8, 1909, and is entitled "An act to prevent fraud in the purchase and sale of grain and other commodities." The statute reads: "§ 1. Every sale of grain, seed, hay or coal shall be made on the basis of *the actual weight thereof*, and any purchaser of grain, seed, hay or coal, who shall deduct any amount from the actual weight or measure thereof under claim of right to do so *by reason of any custom or rule of a Board of Trade or any pretense whatsoever*, shall be deemed guilty of a misdemeanor, and shall be subject to a fine of not less than ten dollars nor more than one hundred dollars for each and every offense. § 2. No agent or broker selling any grain, seed, hay or coal shall have authority, under claim or right to do so *by reason of any custom or rule of Board of Trade*, to sell any grain, seed, hay or coal only on the basis of the actual weight thereof, and any contract of sale of any grain, seed, hay or coal made in violation of this act shall be null and void." Mo. Sess. Acts, 1909, p. 519; Mo. Rev. Stat., §§ 11969, 11970.

The information charged that the accused, on the first day of September, 1909, at the County of Jackson, State of Missouri, purchased from one James Anderson a carload of wheat, by weight, and unlawfully took and de-

ducted from the actual weight one hundred pounds, pretending and claiming the right to make such deduction, and to have and keep the said one hundred pounds so deducted free of charge and cost to him, under and by virtue of a rule and custom of the Board of Trade of Kansas City, Missouri.

Having been arrested on a capias and being held in custody by the defendant as Marshal, the accused presented to the Criminal Court an application for a writ of *habeas corpus*—claiming that he was deprived of his liberty in violation of the Fourteenth Amendment of the Constitution of the United States. The application was denied, but it was subsequently granted by the Supreme Court of the State. The latter court upon final hearing also denied the application, and ordered that the petitioner be remanded to the custody of the Marshal. The case is now here for review, upon assignments of error which question the constitutional validity of the statute under the Fourteenth Amendment.

The case was heard upon an agreed statement of facts, the parties reserving all questions as to the relevancy of any particular fact therein stated. As the case is of some importance it will be appropriate to set forth the above statement in full, as follows: "Without admission of either party as to the relevancy of any particular fact herein set forth, the following facts are agreed between the parties: There are competitive grain markets at Galveston, Texas; Chicago, Illinois; Omaha, Nebraska; Atchison and Wichita, Kansas, and St. Louis, St. Joseph and Kansas City, Missouri. That Kansas City is a primary grain market. That a very slight difference in price or condition will influence the market course of grain. That the Board of Trade of Kansas City, Missouri, is a voluntary organization of buyers and sellers of grain and provisions, supported by dues and assessments and maintained for the purpose of furnishing a marketing place

where such persons can meet and, under rules of safety and convenience, transact such business. Its objects are: 'To maintain a Board of Trade, to promote uniformity in the customs and usages of merchants; to inculcate principles of justice and equity in business; to facilitate the speedy adjustment of business disputes; to inspire confidence in the business methods and integrity of the parties hereto; to collect and disseminate valuable commercial and economic information, and generally to secure to its members the benefits of co-operation in the furtherance of their legitimate pursuits, and to promote the general welfare of Kansas City.' Its members are governed by rules and regulations, enacted by the members, and which form part of the written contract of association between them. This organization provides for the exclusive use of its members a trading floor, where grain is bought and sold only under and according to said rules. Three of said rules are: '§ 16. The weight Supervising Committee shall have supervision, through the Weight Department, of the unloading of all cars unloaded at all elevators, mills, warehouses, transfer and team tracks, within the jurisdiction of this Board, and shall cause the same to be thoroughly swept and cleaned when unloaded. Sweeping or cleaning of cars subsequently by any operator or employé of any elevator, mill, warehouse, transfer or team tracks, or by any person or persons under agreement with the same; or the buying or receiving of any such sweepings or cleanings by any member of this Association is prohibited. § 17. Violations of any of the provisions of section 16 of this article shall subject the members so violating to a fine of $50.00 for the first offense, to a fine of $100.00 for the second offense, to expulsion and forfeiture of membership for the third offense. § 18. On all grain bought by members of the Kansas City Board of Trade, and on which Kansas City unloading weights are given, an allowance of one hundred lbs. per car shall be

made to the buyer, to cover loss on account of dirt and
other foreign matter.' That said Board of Trade main-
tains a bureau of weights, which strictly enforces rule 16.
That rules 16 and 17 were enacted to secure to the seller
full weight of the entire contents of the car and rule 18
to secure the buyer from loss through dirt and foreign
matter in or swept out with the grain, which was unloaded
at Kansas City. Before grain is sold it is graded. One
of the considerations in grading is the dirt and foreign
matter in the grain. Experience had shown that there is
a loss from dirt and foreign matter, varying with different
cars, which is not fully taken care of in the grade. That
there is no method in use of accurately determining the
percentage of such foreign matter and dirt, and the one
hundred pound quantity was taken as a fair average.
The members of said Board of Trade buy and sell some-
times as commission men for outsiders and sometimes
for their own account, and it is impossible to tell without
inquiry whether a buyer or seller is acting for himself or
for some one else. The buying and selling of grain on the
floor of said Board of Trade is as in all other markets,
based upon the constantly and rapidly fluctuating market
prices in that and the other principal grain markets.
There is no time nor opportunity to ascertain the capacity
(principal or agent) in which a member is acting when he
buys or sells, and, if he be in reality acting as agent, no
opportunity to investigate the financial standing of the
real principal. Because of this condition and also to se-
cure the prompt and faithful performance of all such con-
tracts of sale there is a rule of said Board of Trade for-
bidding the disclosure of outside principals, and holding
the member in all cases as the principal. There are also
rules making a membership responsible for the faithful
performance of such contracts. That the State Railroad
and Warehouse Commission has in force a rule requiring
cars unloaded at Kansas City to be cleanly swept. That

the method of making the reduction is to weigh the loaded car; then after emptying and cleanly sweeping the car, to weigh the car; the difference in these two weights is entered on the account sales as the weight of the carload of grain, the deduction of one hundred pounds being also noted on that slip and settlement made for this balance. That is, the weight of the entire contents of the car is shown, and also the one hundred pounds' deduction on the face of the account sales given the seller. That upon the first day of September, 1909, your petitioner [House] bought upon the trading floor of said Board of Trade, and from a member thereof, a carload of wheat on Kansas City unloading weights. In accordance with the above method and under said rule 18, he deducted one hundred pounds and made settlement for the balance. The member selling this grain did not own it, but was acting as a commission man. He, however, dealt with your petitioner as in his own right, and your petitioner had no notice or knowledge that such seller was not the real owner of the grain. Nothing had been said between the member selling and his principal as to the allowance of the one hundred pounds. Both your petitioner and the seller understood at the time of sale that it was made subject to this rule."

An extended discussion of the general question of constitutional law raised by the assignments of error is rendered unnecessary by former decisions of this court. There are certain fundamental principles which those cases recognize and which are not open to dispute. In our opinion, they sustain the power of the State to enact the statute in question. Briefly stated, those principles are: That the Government created by the Federal Constitution is one of enumerated powers, and cannot, by any of its agencies, exercise an authority not granted by that instrument, either in express words or by necessary implication; that a power may be implied when necessary

to give effect to a power expressly granted; that while the Constitution of the United States and the laws enacted in pursuance thereof, together with any treaties made under the authority of the United States, constitute the Supreme Law of the Land, a State of the Union may exercise all such governmental authority as is consistent with its own constitution, and not in conflict with the Federal Constitution; that such a power in the State, generally referred to as its police power, is not granted by or derived from the Federal Constitution but exists independently of it, by reason of its never having been surrendered by the State to the General Government; that among the powers of the State, not surrendered— which power therefore remains with the State—is the power to so regulate the relative rights and duties of all within its jurisdiction so as to guard the public morals, the public safety and the public health, as well as to promote the public convenience and the common good; and that it is with the State to devise the means to be employed to such ends, taking care always that the means devised do not go beyond the necessities of the case, have some real or substantial relation to the objects to be accomplished, and are not inconsistent with its own constitution or the Constitution of the United States. The cases which sanction these principles are numerous, are well known to the profession, and need not be here cited.

Applying these principles to the present case we cannot say that the statute in question is in conflict with the Constitution of the United States. The Supreme Court of Missouri well observed that the object of the statute was to prevent the enforcement of a rule of a board of trade, under the ordinary operation of which unfair and fraudulent practices occur, or would most probably occur, in the sale of grain and the other commodities named. That court said:

"The provision of the act which petitioner is charged

with having violated is that part thereof which prohibits
any purchaser of grain from deducting any amount from
the actual weight under a claim of right to do so by reason
of any custom or rule of the Board of Trade and it is the
rule of the Kansas City Board of Trade at which this
act is really aimed. The petitioner claims that this act
is unconstitutional because it prohibits him from deduct-
ing an arbitrary amount, to wit, one hundred pounds
from each and every car of grain, irrespective of the fact'
whether or not it actually contains any dirt or foreign
substance. While conceding in the agreed statement of
facts that there is no method of accurately determining
the percentage of such foreign matter and dirt he assumes
that there will be an average of one hundred pounds to
each car. He admits that in grading wheat, dirt and for-
eign matter are taken into account in determining the
value of the grain, but the Kansas City Board of Trade
have arbitrarily added to this and deducted one hundred
pounds from every car, so that if A shipped a car of grain
to Kansas City to a member of the Board of Trade, which
was entirely free from dirt or foreign matter, under this
rule one hundred pounds would be deducted and he loses
the value of this one hundred pounds and receives no
compensation therefor, but is told that he must submit to
this because some other shipper may ship a carload of
grain containing two hundred pounds of dirt or foreign
matter, thus the grain of A which contains no dirt is
taken without compensation and the man who shipped
a carload of grain with two hundred pounds of dirt suf-
fers a deduction of only one hundred pounds. . . .
1 *Bishop's New Crim. Laws,* 234. It prohibits merely
the taking of one man's property by another without
compensation. It imposes no unjust burden upon the
purchaser but simply inhibits his deduction from the
wheat he purchases, a part thereof which he would take
without paying the seller therefor by virtue, not of any

agreement with the seller, but by virtue of a rule made by an association of which he is a member."

Again, the Supreme Court of the State says: "Petitioner insists that by prohibiting him from making the deduction of one hundred pounds his property is taken without due process of law. We agree with the Attorney General that he has reversed the conditions. To strike down this act will be to permit him to continue to take the shipper's property without due process of law, and without any compensation therefor. Without further elaboration, we are of the opinion that this act is a valid one and it is wisely aimed to prevent unjust and unfair practice and to repeal and nullify a rule of the Board of Trade which is unjust and unfair and contrary to good morals and fair dealings, and the act offends against no provision of the Constitution."

Reference has been made to the fact that the Board of Trade of Kansas City is a voluntary association of individuals who perform great service to the public; and that its purpose is to enforce, as between its members, a high standard of business dealings. Let all this be granted, and yet it must be held that the Board, in the management of its affairs, has such close and constant relations to the general public, that the conduct of its business may be regulated by such means, not arbitrary or unreasonable in their nature, as may be found by the State necessary or needful to protect the people against unfair practices that may likely occur from time to time. Such regulations do not, in any true sense, interfere with that "liberty of contract" which the individual members of the Board of Trade are undoubtedly entitled, under the Constitution to enjoy, without unnecessary interference from government; for, the liberty of contract which that instrument protects against invasion by the State is subject to such regulations of the character just stated, as the State may establish for the protection of the public

and the promotion of the general welfare. If such state regulations are not unreasonable, that is, not simply arbitrary nor beyond the necessities of the case, they are not forbidden by the Constitution of the United States. We so adjudge on both principle and authority.

The judgment of the Supreme Court of Missouri is

*Affirmed.*

MR. JUSTICE MCKENNA concurring.

THE CHIEF JUSTICE and myself concur in the judgment solely on the ground that it is competent for the State of Missouri to provide that, in the absence of an express contract to which the owner of the articles sold on the Board is a party, the rule of the Kansas City Board of Trade shall not prevail.