# Highland, Appellant, *v.* Russell Car & Snow Plow Co.

*Constitutional law — Federal Constitution — Contract clause — Due process—Violation of contract—Police power—War powers—Reasonable regulation of prices—Confiscation—Food and Fuel Act of Congress of August 10, 1917, U. S. Comp. Stat. Ann. Supp. 1919, section 3115 1/8 q—Market value—Cost plus—Fair return—Coal.*

1. Congress may, by its laws, impair the obligation of contracts.

2. The "contract clause" of the Constitution is an inhibition on the state's power, and not a limitation on the power of the United States.

3. But equally with the states, Congress may not deprive persons or corporations of property without due process of law.

4. Congress may impair contracts only where the act has a direct relation to some enabling power in the Constitution.

5. Under the Constitution, Congress may empower the President to fix the prices of commodities necessary to the support of the nation at war, or its people while engaged in war.

6. The voluntary sale by a citizen of a commodity whose price has been regulated by an Act of Congress and an executive order, is not a taking for public purposes within the 5th Amendment of the Constitution of the United States.

7. Under the war powers vested in Congress by the Constitution, the Food and Fuel Act of Congress of August 10, 1917, U. S. Comp. Stat. Ann. Supp. section 3115⅛ q, and the executive order of October 27, 1917, fixing the price of coal, are constitutional. Every reasonable intendment must be in favor of the validity of the act and order.

8. Such power in Congress comes from the war power and not from any special police power existing in the federal Government.

9. The power to fix the price of commodities, declared to be necessary, has no relation to a police power such as held by the states under which contracts or property affected with a public interest are regulated or improved in aid of any recognized purpose which calls such powers into operation.

10. The United States being a Government of limited powers does not possess a general police power; that remained with the states in the interest of welfare, health, morals and safety.

11. The war power of Congress is subject to the due process clause of the 5th Amendment, but extends to all interrelated mat-

ters which in any way tend toward the accomplishment of their end.

12. Regulation of prices of food and fuel is due process, but regulation that is unreasonable, or that in certain situations fixes prices at less than a reasonable return, is not due process, but confiscation under the war power.

13. In an action to recover the difference between the contract price of bituminous coal, and the amount paid under the prices fixed by the government, under executive order, the plaintiff must show that the President's order was unreasonable.

14. In such case nothing can be recovered, if neither in the pleadings nor the proof does it appear that the government price was unreasonable.

15. The price fixed by the contract itself is not to be accepted as a reasonable price.

16. The terms of an isolated contract, without more, do not fix, nor are they evidence of, market price, fair return, cost plus, or a reasonable price.

17. Market price is based on stable values which do not exist during war.

18. No fixed standard can be called fair return, for commodities such as coal, where a monopoly in its trade, in the course of things, cannot exist.

19. Cost plus a reasonable profit is not a dependable rule.

Argued September 28, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 225, Jan. T., 1926, by plaintiff, from judgment of Superior Court, Oct. T., 1925, No. 82, affirming judgment of C. P. Clearfield Co., Sept. T., 1921, No. 427, in case of V. L. Highland v. Russell Car & Snow Plow Co. Affirmed.

Appeal from Superior Court. See 87 Pa. Superior Ct. 235.

The opinion of the Supreme Court states the facts.

Judgment of lower court affirmed. Plaintiff appealed.

*Error assigned* was judgment of Superior Court, quoting it.

*Lisle D. McCall,* for appellant.—Congress cannot forbid persons the freedom of contract as to the price of coal during war: Newton Coal Co. v. Davis, 281 Pa. 74, 79, 267 U. S. 292.

Authority to fix prices of coal establishes the sum of just compensation.

Just compensation is the fair market value of the property at the time and place of delivery thereof as shown by the current market price in numerous transactions of purchase and sale: U. S. v. Chandler-Dunbar Co., 229 U. S. 53; Boom Co. v. Patterson, 98 U. S. 403.

The Lever Act does not pretend to provide a method of compensation for those whose right to contract has been restricted in pursuance thereof: Ex Parte Milligan, 71 U. S. 2; Morrisdale Coal Co. v. U. S., 259 U. S. 189; Frisbie v. U. S., 157 U. S. 160.

*A. M. Liveright,* for appellee, was not heard.

OPINION BY MR. JUSTICE KEPHART, January 3, 1927:

Appellant instituted this action to recover the difference between the contract price of bituminous coal and the amount paid under government regulations promulgated while this country was at war with Germany. The contract of sale was made when we were actively engaged in war, and after the announcement by the government of the prices on coal. The claim for the difference in price was based in the court below on the allegation that Congress, under the Constitution, did not possess the power to enact the phases of the Lever Act (U. S. Comp. Stat. Ann. Supp. 1919, section 3115⅛ q) applicable to fixing prices of commodities, and that the President's order issued thereunder was ineffective. The court below sustained the disputed sections of the act and the claim was dismissed.

The act, known as the Food and Fuel Act, was passed August 10, 1917. Its purpose was to provide for the national security and defense by encouraging the pro-

duction, conserving the supply, and controlling the distribution of food products and fuel. It declared that, by reason of the existence of a state of war, it was essential to national security and defense for the successful prosecution of the war, and for the support and maintenance of the army and navy, to assure an adequate supply and equitable distribution of foods and fuel hereinafter called necessaries. The President was given ample authority to carry out the purposes of the act.

Section 25 provides "that the President.....is..... authorized.....whenever and wherever in his judgment necessary for the efficient prosecution of the war, to fix the price of coal and coke......sold, either by producer or dealer." By executive order of August 23d, a scale of prices was fixed, increased on October 27, 1917, the government price on this coal being $2.45 per ton, and appellant's contract price $3.60.

It must be kept in mind, we are dealing with an act of Congress which brought about the conditions on which this action is predicated. The claim is not against the United States, responsible for the law (as in Morrisdale Coal Co. v. U. S., 259 U. S. 188) or one of its agencies, but is on a contract between private individuals executed notwithstanding the law.

It is contended the applicable feature of the Lever Act violated the "contract" clause of the federal Constitution which provides that "no state shall pass any law impairing the obligation of contracts," and the 5th Amendment guaranteeing that no person shall be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." It is further urged that Congress, in war or peace, does not possess the power to fix prices of commodities known and described as necessaries.

The "contract clause" is an inhibition on the state's power and not a limitation on the power of the United States, and offers no protection to plaintiff's contract.

Congress may, by its laws, impair the obligation of contracts: Sinking Fund Cases, 99 U. S. 700; United States v. Union Pacific Ry., 160 U. S. 1, 33, 34. The case of Hepburn v. Griswold, 8 Wall. 603, which held to the contrary, was directly overruled two years afterward by the Legal Tender Cases, 12 Wall. 457. Of course, this does not mean Congress may at will interfere with contract rights. It was said in the Sinking Fund Case, supra, that, "the United States cannot, any more than a state, interfere with private rights, except for legitimate governmental purposes. They are not included within the constitutional prohibition which prevents states from passing laws impairing the obligation of contracts, but equally with the states they are prohibited from depriving persons or corporations of property without due process of law." Congress may impair contracts only where the act has a direct relation to some enabling power in the Constitution. We must still consider whether the act has such relation, or deprives appellant of his property without due process of law, and the effect of police regulations on contracts.

The act, and the order thereunder, regulates, as between individuals, the prices to be paid for certain commodities. Under the 5th Amendment, appellant's property was not taken for "public use" as that term is generally understood, even though parted with in dutiful compliance with the law of the country. Had the Government taken the coal the last clause of the 5th Amendment would apply, but the voluntary sale by a citizen to a citizen is not a taking for public purposes within the 5th Amendment. See Morrisdale Coal Co. v. United States, supra. We shall discuss the first clause of this amendment later.

Under the Constitution, may Congress empower the President to fix the prices of commodities necessary to the support of the Nation at war, or its people while engaged in war? The purpose named in the statute coupled with the existence of a state of war, would stamp

the act of Congress as being not only a reasonable exertion of power as a government, but one that was necessary for the preservation of the Nation. It ought to be lawful, even if in direct opposition to the Constitution, unless that instrument is so omnipotent as to supersede the preservation of the Nation as such. The government must preserve its republican form under that document, and it would indeed be strange that one of its provisions, relating to its individual members, should so overpower the war and other powers, as to cause, perhaps, the entire instrument, as well as the Nation, to fall. This right, claimed as being so all-powerful, is one appertaining solely to individuals, and, in this connection, a small part of the great whole that makes up the government and organized society. But we are relieved of the necessity of going outside of the Constitution to find, in the right to exist as a Nation, the power to enact such laws. A fair construction of the Constitution should leave no doubt as to the supreme power of Congress when war exists, and that Congress may delegate powers such as these to the President.

Congress may "declare war" (which it did), "raise armies and support them," and "provide and maintain a navy." Article I, section 8, of the Constitution gives it the power "to pass all laws which shall be necessary and proper for carrying into execution the foregoing powers." These are broad rescripts of government and slow must any court be to attempt to throttle their exercise when exigencies of war present themselves. It has been established for all time by the decision of Chief Justice MARSHALL, in M'Culloch v. Maryland, 4 Wheat. 316, 420, that this clause confers broad powers on Congress. "Let the end be legitimate, let it be within the scope of the Constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consistent with the letter and spirit of the Constitution, are constitutional."

The power to fix the prices of commodities, declared to be necessaries, has no relation to a police power such as held by the states under which contracts or property affected with a public interest are regulated or impaired in aid of any recognized purpose which calls such powers into operation. The United States being a government of limited powers, does not possess a general police power; that remained with the states in the interest of welfare, health, morals and safety. (House v. Mayes, 219 U. S. 270, 281; Chicago, R. I., & Pac. Ry. v. Arkansas, 219 U. S. 453). A special police power has been found to exist in the United States government in aid of one of its delegated powers: Cooley on Constitutional Limitations, 732; Brooks v. United States, 267 U. S. 432, 436. But the authority of Congress to fix such prices must come, if at all, from the "war power" and not the police power.

In Newton v. Director General, 281 Pa. 74, we said in discussing the "war power," "every reasonable intendment must be in favor of the validity of the act and the order. Peace not being actually declared, any matter, directly or indirectly involved in the prosecution of the war within the scope of the act, comes under the authority delegated to Congress; and where this appears, the decision of the President should be final." See also Hamilton v. Kentucky Distilleries & Warehouse Co., 251 U. S. 146. The war power is not limited to victories, but extends to all interrelated matters which in any way tend toward the accomplishment of their end: Stewart v. Kahn, 11 Wall. 493, 506, 507. See Lajoie v. Milliken, 242 Mass. 508, 136 N. E. 419, 423. Such interrelated matters in time of war may extend to the regulation of the sale and distribution of food and fuel supplies which, under normal conditions, were free to commerce in its usual channels. These commodities are affected with national interest for the reasons stated, and causes them to be subject to government regulation where before they were unobstructed and unhindered by

the law: Newton v. Director General, supra. While the precise question has not been decided by the Supreme Court of the United States, under these principles it has upheld the validity of the Espionage Act (Schenck v. United States, 249 U. S. 47; Frohwerk v. United States, 249 U. S. 204); an act punishing persons who maintained houses of ill fame near military stations (McKinley v. United States, 249 U. S. 397); the Selective Draft Act (Selective Draft Cases, 245 U. S. 366) and the War-Time Prohibition Act (Hamilton v. Kentucky Distilleries Co., supra; Ruppert v. Caffey, 251 U. S. 264). In two cases arising in different jurisdictions, section 25 of the Lever Act has been held constitutional: Lajoie v. Milliken, supra; Ford v. United States, 281 Fed. 298· (reversed in the Supreme Court on other grounds). Consequently in view of the authorities considered above, and upon principle, we conclude that the Lever Act was within the implied powers of Congress.

We do not here attempt to define or limit the "war power" of Congress and only decide that the sections of the Lever Act, under consideration, may be upheld under the war powers, having a direct relation thereto, to which contracts made during the war are subject.

But appellant insists that even if his contract must yield to this exercise of the "war power," he should not be deprived of a fair profit on his sales, or that measured by his contract price; this he says the purchaser must pay. It is pointed out that, had the United States commandeered this coal, his compensation would be measured under the Fifth Amendment by just compensation, and that, as between individuals, the same rule should apply.

This brings us again to a consideration of the due process clause. It has been held that the Fifth Amendment imposes on the national power the same limitation as that placed on the powers of the states by the Fourteenth Amendment. The right to regulate the prices of

commodities under the war power may to some extent, be likened to the regulation of public utilities under the police power. We may assume for this discussion they have this point in common, that property shall not be taken without due process of law. Regulation is due process (White's App., 287 Pa. 259), but regulation that is unreasonable, or that in certain situations fixes prices at less than a reasonable return is not due process but is confiscation under the "war power" just as unfair return is confiscation under the police power. The United States can no more so regulate acting through the war power than the State can so regulate through the police power. Under the 5th Amendment, the United States may, through the war power, fix prices as a State may do so under the police power. Assuming then, in the instant case, that the war power is subject to the due process clause, what must be the measure of compensation?

In Newton Coal Co. v. Director General, supra, p. 85, where the United States was concerned, we said "the exercise of the war power is subject to the Fifth Amendment, except in respect to property destroyed by military operation." Just compensation must be made for private property taken for war purposes. The ascertainment of compensation is a judicial function. In claims against the federal Government "where private property is taken for public use......market...... price is just compensation": Davis v. Newton Coal Co., 267 U. S. 292, 301. It has been held, dealing with the charges of profiteering during the war, that reasonable profit or "just compensation" would be the market price. See cases cited in United States v. Cohen Grocery Co., 255 U. S. 81, 90, 91. There may be cogent reasons why market prices should apply to such cases, but the attempt to set up war time inflated markets of a commodity easily susceptible to such influence should not control or be accepted as the standard. Market price is the common law rule when the value may be easily and

fairly accurately ascertained. It is based on stable values which do not exist during war.

Fair return is the rule applicable to public utilities. No fixed standard can be called fair for commodities such as coal where a monopoly in its trade, in the course of things, cannot exist. What might be a fair return to coal mine "A" would be unfair for "B." A uniform price could not always be made to apply equitably throughout even one small district. Cost plus a reasonable profit, also suggested as the correct measure of compensation, is not a dependable rule: Blake v. United States, 275 Fed. 861, 867.

What the plaintiff must show, at least when he invokes the due process clause, is that the President's order is unreasonable. This may involve considerations which do not enter into cost plus, fair return or market value. But whether within or without the rule of market value, fair return, cost plus, or reasonable order, nowhere in the pleadings or proofs is it asserted or claimed that the government price violated any of them. There is not a word of evidence fixing the price or value of any of them though all this could easily have been shown. Appellant's counsel urges, however, that without evidence, we should accept the price fixed by the contract as market price, or just compensation, or the equal of the other rules affecting compensation. The terms of an isolated contract without more do not fix nor are they evidence of market price, fair return, cost plus, or a reasonable price.

That the purchaser agreed to the price is not material. When his attention was called to the government order, payment was refused except under the fuel administrator's price. The unanswered question still remains.

Judgment affirmed.