KILGORE et al. v. MAYO, Com'r of Agriculture of Florida, et al.

District Court, S. D. Florida.
Aug. 27, 1931.

Hampton & Greene, of Ocala, Fla., for plaintiffs.

Cary D. Landis, Atty. Gen., for defendants.

Before BRYAN and SIBLEY, Circuit Judges, and AKERMAN, District Judge.

BRYAN, Circuit Judge.

This is a bill of complaint brought by several growers of citrus fruits against the commissioner of agriculture of the state of Florida and several other state officials, to enjoin the enforcement of an act of the Legislature passed· in 1927 (Laws 1927, c. 11844), as amended in 1929 (Laws 1929, c. 14485), relating to the use of arsenic as a spray on bearing citrus fruit trees. It comes before us on an application, pursuant to 28 USCA § 380, for an interlocutory injunction.

The 1927 act provides that it shall be unlawful for the owner to use arsenic as a fertilizer or spray on his bearing citrus trees, section 1; or to sell or offer for sale any citrus fruit which shall contain any arsenic, section

2. The act of 1929 amends the above two sections and several others, but only to the extent of permitting the use of arsenic when ordered by the federal government or the state plant board for the purpose of destroying the Mediterranean fruit fly. It was enacted as a temporary measure to meet a great emergency, which happily has passed;· and therefore it need not be further considered. The act of 1927 further provides that inspectors authorized by earlier legislation shall inspect fruit in a packing house or other place where it is being received for sale or transportation; that when any such inspector finds fruit which shows an abnormal and excessively high ratio of total soluble solids of juice to the anhydrous citrus acid thereof, indicating the presence of arsenic therein, he shall seize such fruit pending a chemical analysis of it and notify the manager of the packing house of such seizure; that the fruit must be held for ninety-six hours, during which time samples shall be analysed by a chemist designated by the commissioner of agriculture under regulations to be is-. sued by him. If upon analysis the fruit is found to contain no arsenic, it is to be released; but if it is found to contain arsenic, it is to be destroyed. The act authorizes the commissioner to promulgate rules and regulations for carrying out and enforcing these provisions. Sections 3, 4, 5, 6, and 7; Compiled Gen. Laws 1927, §§ 3241, 3242, 3243, 3244, and 3245. A regulation adopted by the commissioner, which was in force long prior to this controversy, provides for analysis by a chemist of the inspection bureau and by a referee chemist in case of appeal to be agreed upon by the commissioner and the claimant of the fruit.

The Legislature of Florida in 1911 passed an act making it unlawful to sell fruit which was immature or otherwise unfit for consumption. Comp. Gen. Laws 1927, § 3220. In 1913 it required a certain percentage of citric acid before fruit could be shipped, or a showing of an average half color indicating ripeness. Id., § 3223. In 1925 it substituted for these loose, indefinite provisions specific ratios of total soluble solids to the anhydrous citric acid. Section 3228. Experience proved that these earlier tests were evaded by shippers who were anxious to get their fruit on the market early. One practice indulged in by some shippers was to subject their fruit to heat so as to bring it within the color test; but the most successful plan for defeating the purpose of keeping all except ripe fruit off the market was to use arsenic as a spray, which has the

effect of preventing the development of citric acid, thus causing immature fruit to meet the test then prescribed by law.

It is the contention of complainants that the act of 1927 violates the Fourteenth Amendment, in that it deprives them of their property without due process of law. A suggestion is made that the statute prohibits the use of arsenic in fertilizer or as a spray. Complainants say the statute literally construed would prevent the use of fertilizer in the ground around the trees, because standard fertilizer has arsenic in it. But they allege that it is the intention of the commissioner to prevent only the shipment of fruit upon which arsenic has been sprayed. They therefore do not place themselves in a position to complain about a possible prevention of the use of arsenic in fertilizer. The principal reason urged to sustain the contention that the due process clause of the Fourteenth Amendment is violated is that the act of the Legislature does not itself provide the owner with an opportunity to be heard before his fruit is destroyed. The statute provides for notice; and, as we think, it also makes sufficient provision for a hearing, for it requires the inspector who seizes the fruit to send samples to a chemist designated by the commissioner and authorizes the commissioner to make necessary rules and regulations for enforcing the provisions of the law. There is no question here but that the regulations of the commissioner afford an ample opportunity for hearing within the four days that the fruit is held pending the analysis of samples. Much clearer provision for hearing is given under the statute in question than was made in the Georgia law which was held to be sufficient by the Supreme Court of Georgia in Wadley Southern Railway Co. v. State, 137 Ga. 497, 73 S. E. 741, affirmed by the Supreme Court of the United States in 235 U. S. 651, 35 S. Ct. 214, 59 L. Ed. 405. We are of opinion that a denial of due process of law cannot be based upon a failure of the statute to provide an opportunity for a hearing. We need not therefore consider whether it was necessary for the statute to provide for either notice or hearing, although the Supreme Court of the United States has several times held that the police power does not give way to the Fourteenth Amendment because that power originally belonged to the states, has always remained with them, and under it states may, without providing in their laws for notice or hearing, destroy foods or other things used to the public detriment; provided only that the means do not go beyond the necessities of the case. Lawton v. Steele, 152 U. S. 133, 14 S. Ct. 499, 38 L. Ed. 385; North American Cold Storage Co. v. Chicago, 211 U. S. 306, 29 S. Ct. 101, 53 L. Ed. 195, 15 Ann. Cas. 276; House v. Mayes, 219 U. S. 270, 31 S. Ct. 234, 55 L. Ed. 213. Under its police power the state has the right to prevent shipment of citrus fruit that is immature or unfit for consumption in order to protect a great industry. Sligh v. Kirkwood, 237 U. S. 52, 35 S. Ct. 501, 59 L. Ed. 835. And it is for the Legislature and not the courts to determine the necessity for a law such as is here involved. Adams v. Milwaukee, 228 U. S. 572, 33 S. Ct. 610, 57 L. Ed. 971.

The application for interlocutory injunction is denied.