[No. 18548.    Department Two.    May 12, 1924.]

THE STATE OF WASHINGTON, *on the Relation of William S. Lane, Appellant,* v. C. A. FLEMING *et al., Respondents.*[1]

CONSTITUTIONAL LAW (48, 114)—POLICE POWER—EQUAL PROTECTION OF THE LAWS. The provision of the Federal and state constitutions guaranteeing the equal protection of the laws and prohibiting special privileges or immunities, do not apply to legislative enactments in the exercise of the police power.

CONSTITUTIONAL LAW (48, 114)—POLICE POWER—EQUAL PROTECTION OF LAWS—PERMIT FOR GAS STATION—PROHIBITION OF LAWFUL BUSINESS. An ordinance providing for permits for the erection of gasoline service stations, after a public hearing, and giving the council power to deny the same if found against public interest, is a valid exercise of the police power in view of the dangerous nature of the business, and is not in conflict with the fourteenth amendment of the Federal constitution, or Art. 1, §§ 3 and 12, of the state constitution (PEMBERTON, J., dissenting).

Appeal from a judgment of the superior court for Spokane county, Oswald, J., entered December 13, 1923, upon findings in favor of the defendants, in an action to compel a city council to grant a permit for a gasoline service station, tried to the court. Affirmed.

*E. A. Cornelius,* for appellant.

*J. M. Geraghty* and *Alex M. Winston,* for respondents.

MITCHELL, J.—The relator, William S. Lane, is the owner of a lot at the northeast corner of intersecting

[1]Reported in 225 Pac. 647.

streets in Spokane, a city of the first class. He duly made an application for a permit to erect a gasoline service station on his property, which was refused by the city council. Thereupon he instituted mandamus proceedings in the superior court to compel the granting of a permit, and upon issue joined, the trial resulted in findings against him, and from a judgment on the findings, this appeal has been taken.

The findings, to which no exceptions were taken, are, in effect, that the relator is the owner of the lot described; that there was and is an ordinance of the city, number 2826, which provides, among other things:

"Section 2. Whenever a permit for the erection of a gasoline service station outside of the fire limits is filed with the city council, the council shall set a date for a hearing upon the application, which date shall not be more than ten days from the date of filing the application, and shall cause notice of such hearing to be posted in a conspicuous place upon the premises to be occupied by the station for at least five days before such hearing. At such hearing the city council may grant the permit or may deny the same if it finds that it would be against public interest to allow the installation of a service station in the location specified."

that the relator duly made an application for a permit to erect a gasoline service station on the property described, the same being outside the fire limits of the city, and that the city council set a date for hearing the application, caused notice of such hearing to be given as required by the ordinance, and that, upon the hearing, the city council refused to grant the permit; that on one of the streets near the relator's property, commencing in the next block therefrom, there are a number of small mercantile establishments, a Masonic temple directly across the street from his premises, three dwelling houses in the block in which his lot is situated, one of which is on an adjacent lot, and that

east and north from his lot for a distance of half a mile is a residential district; that there is in force an ordinance providing in circumstantial detail for the construction and maintenance of gasoline service stations, and that the relator is ready to comply with all rules and regulations of the city with reference to the storage of gasoline and as to the cutting of the curbs of the streets and the construction and maintenance of driveways to and from the streets to his service station.

By assignments of error, the appellant assails the constitutionality, under the fourteenth amendment of the constitution of the United States, and under the similar provisions of §§ 3 and 12, art. 1, of the constitution of the state, of § 2 of the ordinance number 2826. If the section of the ordinance referred to is a proper exercise of the police power its constitutionality can hardly be denied. Indeed, the provisions of the Federal and state constitutions relied on do not apply to legislative enactments in the exercise of the police power. *Powell v. Pennsylvania,* 127 U. S. 678; *Fisher Flouring Mills Co. v. Brown,* 109 Wash. 680, 187 Pac. 399. This upon the theory, as stated in the *Powell* case, that organized government cannot divest itself of the power to provide for those things essential in the legitimate exercise of the police power.

So long as the subject-matter is local there can be no question of the authority of the city to exercise that power. In the Spokane case of *Detamore v. Hindley,* 83 Wash. 322, 145 Pac. 462, this court said:

"The state constitution, § 11 of article 11, provides:

" 'Any county, city, town or township, may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws.'

"This is a direct delegation of the police power as ample within its limits as that possessed by the legislature itself."

In defining that power we said in *State v. Pitney,* 79 Wash. 608, 140 Pac. 918, Ann. Cas. 1916A 209:

" . . . whatever may be the limits by which the earlier decisions circumscribed the power, it has, in the more recent decisions, been defined to include all those regulations designed to promote the public convenience, the general welfare, the general prosperity, and extends to all great public needs, as well as regulations designed to promote the public health, the public morals, or the public safety."

Often the troublesome question arises whether an ordinance must lay down a uniform rule of action governing the exercise of the dispensing power. The question becomes less troublesome, however, upon observing the distinction between those things that are not harmful or unsafe, and hence not within the police power, and those things that are within that power. On the subject of "ordinances conferring discretionary power on city officers," Dillon on Municipal Corporations (5th ed.), § 598, says:

"Ordinances prohibiting certain acts *without the consent or permit of the common council or the mayor or other executive officer,* have in some cases been held to be unreasonable and void, because they submit the rights of individuals to the unrestrained discretion of the council or official. It has been said of ordinances of this nature that they remove the rights of the individual from the domain of law and subject them to the exercise of arbitrary discretion on the part of the council or the officer upon whom the dispensing power is conferred; that it is unreasonable to reserve the right to grant or withhold the privilege as it may suit the pleasure of the council or officer, and that to be valid an ordinance of this nature must lay down a uniform rule of action governing the exercise of the dispensing power."

A number of cases are cited, and the author says:

"It is, however, to be observed that in the great majority, if not in all, of the cases cited, the ordinance

was prohibitory in its nature, and in the view of the courts the acts sought to be prohibited were not of themselves harmful or of such a nature as to justify prohibition. . . . But whilst the principles so laid down are supported by a respectable body of authority, it is believed that they are contrary to the weight of the decisions. Many cases are to be found sustaining ordinances prohibiting acts or even the following of trades or occupations without procuring permits which may be issued at the discretion of the council, mayor, or some other city officer or department, and the fact that the dispensing power was apparently conferred without restraint or qualification has been regarded as arising merely from the difficulty of defining in advance upon what conditions the permit shall be given or the dispensing power exercised. It has also been said that it is not to be assumed that the council or officer in exercising the dispensing power will act arbitrarily or otherwise than in the exercise of a sound discretion.''

Still further, with reference to discretionary powers, the author says in the same section:

''In these cases it appears to be assumed that if the trade or calling is properly of a nature which may be regulated or controlled by virtue of the police power, such regulation or control may be exercised by a prohibition unless a permit be obtained.'' ·

The section concludes with the statement that there are limits to the principle, where it is shown ''that the power thus conferred upon the council or officer *is in fact arbitrarily exercised,*'' citing the case of *Yick Wo v. Hopkins,* 118 U. S. 356, which case has been referred to often in subsequent writings and decisions of the courts. In the case at bar, however, there is no finding that the power, the exercise of which is complained of, was in fact arbitrarily exercised.

In addition to the general grant of the police power to cities by the constitution, the legislature, by subd.

23, § 8966, Rem. Comp. Stat. [P. C. § 678], has provided that cities of the first class shall have power:

"To provide for the prevention and extinguishment of fires, and to regulate or prohibit the transportation, keeping, or storage of all combustible or explosive materials within its corporate limits, and to regulate and restrain the use of fireworks."

That gasoline is a high explosive and when stored in large quantity possesses the power of danger to persons and property, there can be no doubt. In the case of *Whittemore v. Baxter Laundry Co.*, 148 N. W. (Mich.) 437, 52 L. R. A. (N. S.) 930, involving the storage of gasoline, the court said:

"We may also concede that in the instant case every precaution that human ingenuity has conceived has been made use of in the construction of the tanks, as testified to by defendant's experts. Considering, however, the dangerous character of the substance and its power as an explosive, of which, in this age of its wonderful development as a power to propel automobiles, traction engines, and airships, we can well take judicial notice, and also considering human fallibility, that accidents in the operation of the most perfect mechanism will occur, and all that it needs to change what is, when properly protected, a harmless agency, to a most dangerous explosive, is a careless person, etc."

In *Storer v. Downey*, 215 Mass. 273, 102 N. E. 321, the refusal of a permit to erect a garage was sustained; the court said:

"An ordinance of the city of Cambridge (passed under the authority of R. L. c. 104, § 1) provides that 'no building shall be erected for or converted to use as a garage unless such use is previously authorized by the board of aldermen.' This is a valid exercise of the police power. The disagreeable incidents of a garage are well known. They have been adverted to frequently in recent decisions of this court. (Citing cases.) Oil and gasoline, almost inevitably stored and used in them, are so highly inflammable and explosive

that they may increase the danger of fire, no matter how carefully the building be constructed nor how non-combustible its materials. Although lawful and necessary buildings, they are of such character that regulation of the place of their erection and use is well within settled principles as to the police power. The ordinance in its terms differs in no essential particular from many others which have been sustained. (Citing cases.) The case is plainly distinguishable from *Com. v. Maletsky*, 203 Mass. 241, 89 N. E. 245, 24 L. R. A. (N. S.) 1168, and *Goldstein v. Conner*, 212 Mass. 57, 98 N. E. 701; and the cases collected in each of these opinions, where either an innocuous matter has been made utterly dependent upon the action of a public board or a possibly harmful business upon that of a subordinate officer, or the ordinance has been broader than the statute authorized. Here the public board itself is empowered to deal with a subject which may endanger the safety of persons and property, and the ordinance does not exceed the scope of the statute."

In *Brown v. Stubbs*, 128 Md. 129, 97 Atl. 227, the refusal to issue a permit to erect a moving picture theatre in the city of Baltimore was sustained. An ordinance of the city provided that a permit should not be issued for the construction of such a building until the application for a permit was first assented to by the mayor and city council, by ordinance to be passed upon giving notice by newspaper publication fifteen days prior to the introducing of such ordinance. It was claimed that the ordinance was "invalid and unreasonable, in that it commits to the mayor and city council unlimited discretion in granting or refusing permits, and does not undertake to provide any general rules or regulations limiting the exercise of the discretion." Attention is called in the case to a decision of the Maryland court, *State v. Loden*, 117 Md. 373, 83 Atl. 564, Ann. Cas. 1913E 1300, 40 L. R. A. (N. S.) 193, wherein it was said:

"The danger to life and property incident to the use of moving picture machines when operated by incompetent persons is known to all. The films used in connection with the machine are highly explosive and dangerous in their character, and, if not properly managed and cared for, are liable to explode."

The court calls attention to a note to *State v. Loden,* as that case is reported in Ann. Cas., wherein it is said:

"In all jurisdictions wherein the question has been passed on it has been held that the public exhibition of moving pictures is a proper subject of regulation under the police power of the state,"

and continuing in *Brown v. Stubbs, supra,* the court said:

"At some locations they may be safer than others, and there is less danger to adjoining properties in some parts of the city than in others. It would be very difficult, if not impossible, to draw a general ordinance which would accomplish all that is proper, without doing injustice to some, and we can see no reason why an applicant for a license should not be required to first get a permit from the mayor and city council, etc."

Many other cases to the same effect are referred to in the decisions just quoted from.

Appellant relies on *Seattle v. Gibson,* 96 Wash. 425, 165 Pac. 109; *State ex rel. Makris v. Superior Court,* 113 Wash. 296, 193 Pac. 845; and *Vincent v. Seattle,* 115 Wash. 475, 197 Pac. 618. Those cases should not be overdrawn or misapplied. The first one related to the legitimate and harmless business of conducting a drug store and pharmacy. The *Makris* case involved the question of the power of the commissioner of public safety of Tacoma to revoke an outstanding license to conduct "the manifestly lawful business of selling soft drinks and candy in the city," not because of anything inherently harmful or necessarily connected with that

business that would place it within the police power of
the city, but solely because of the manner in which the
licensee was conducting the business. So, with the
*Vincent* case which related, as stated in the opinion, to
"the operation of a place of public amusement, on
private property, involves nothing which is inherently
evil, and the limit of legislative power thereover is to
regulate only." Appellant further cites the case of
*Standard Oil Co. v. City of Kearney,* 126 Neb. 558, 184
N. W. 109, holding invalid an ordinance passed after
the commencement of the erection of a filling station
for gasoline and oil. There was a strong dissenting
opinion in that case. It appears that the main conflict
was over the facts. In the main opinion it was said:

"While there are some phases of it (ordinance)
which upon first impression appear to be within the
domain of the police power of the municipality, yet
when considered in connection with the facts and cir-
cumstances as shown by the record it becomes apparent
that it is an unreasonable, arbitrary and discrimina-
tory exercise of power."

If the decision means other than that the court was
of the opinion that the power conferred was *in fact
arbitrarily exercised,* as was the case in *Yick Wo v.
Hopkins, supra,* we are not disposed to follow it, as
being opposed to what we think to be the weight of
authority.

But the cases relied on by appellant are not in point.
The present case falls within the principle announced
in the Massachusetts and Maryland cases already men-
tioned, and the cases of *Fischer v. St. Louis,* 194 U. S.
361, and *People of State of New York ex rel. Lieber-
man v. Van De Carr,* 199 U. S. 552. In the *Fischer* case
the syllabus is:

"The ordinance of the city of St. Louis, prohibiting
the erection of any dairy or cow stable within the city

limits without permission from the municipal assembly
and providing for permission to be given by such as-
sembly, is a police regulation, and is not unconstitu-
tional as depriving one violating the ordinance of his
property without due process of law, or denying him
the equal protection of the laws.'' (Syllabus.)

In the opinion it appears that the main contention
against the ordinance was ''that, by vesting in the
municipal assembly the power to permit the erection of
dairy and cow stables to certain persons, a discrimina-
tion is thus declared in favor of such persons and
against all other persons, and the equal protection of
the laws denied to all the disfavored class.'' The court
said:

''The power of the legislature to authorize its munic-
ipalities to regulate and suppress all such places or
occupations as in its judgment are likely to be injurious
to the health of its inhabitants or to disturb people
living in the immediate neighborhood by loud noises
or offensive odors, is so clearly within the police power
as to be no longer open to question. The keeping of
swine and cattle within the city or designated limits of
the city has been declared in a number of cases to be
within the police power. . . . Of course, cases may
be imagined where the power to issue permits may be
abused and the permission accorded to social or politi-
cal favorites and denied to others, who for reasons
totally disconnected with the merits of the case are
distasteful to the licensing power. No such complaint,
however, is made to the practical application of the
law in this case, and we are led to infer that none such
exists. We have no criticism to make of the principle
of granting a license to one and denying it to another,
and are bound to assume that the discrimination is
made in the interest of the public, and upon conditions
applying to the health and comfort of the neighbor-
hood. *Crowley v. Christensen,* 137 U. S. 86; *Davis v.
Massachusetts,* 167 U. S. 43; *Soon Hing v. Crowley,*
113 U. S. 703, 710.''

The *Lieberman* case involved a section of the sanitary code of New York, which provided that "no milk shall be received, held, kept, either for sale or delivered in the city of New York, without a permit in writing from the board of health." One objection to the section was that it put absolute power in the hands of the board of health to grant or withhold permits to milk dealers, and therefore violated the fourteenth amendment. In the discussion of the case it was said that the subject-matter was within the police power. A number of cases were referred to on the subject of vesting the dispensing power in the hands of an individual or board, and then the court said:

"These cases leave in no doubt the proposition that the conferring of discretionary power upon administrative boards to grant or withhold permission to carry on a trade or business which is the proper subject of regulation within the police power of the state is not violative of rights secured by the Fourteenth Amendment. There is no presumption that the power will be arbitrarily exercised, and when it is shown to be thus exercised against the individual, under sanction of state authority, this court has not hesitated to interfere for his protection, when the case has come before it in such manner as to authorize the interference of a Federal court. *Yick Wo v. Hopkins,* 118 U. S. 356."

Our views herein are not out of harmony with the cases of *State ex rel. Sayles v. Superior Court,* 120 Wash. 183, 206 Pac. 966, sustaining the refusal to grant a license to operate a pool and billiard hall in view of the harmful nature and tendency often attendant upon the operation of such places, and *Asakura v. Seattle,* 122 Wash. 81, 210 Pac. 30, holding that the business of pawnbroking being a privilege and not a right, a city may either absolutely prohibit or conditionally permit it by means of a license, and that it may provide that

no license therefor shall be granted to an alien. The subject-matters of these two cases were found to be within the police power.

Section 2 of the ordinance in question is made applicable generally to all territory in the city outside of the fire limits, manifestly to lessen the danger by fire to persons and property. It is fair in its plan, providing as it does for a public hearing before the whole council, whose discretion, under all authority and presumptions, will be exercised fairly according to the peculiar and individual circumstances of each case, in the interest of, and on a subject relating to, the general welfare and safety of the persons and property of the community.

Affirmed.

MAIN, C. J., BRIDGES, and FULLERTON, JJ., concur.

PEMBERTON, J. (dissenting)—I dissent. The business of dealing in gasoline and oil is legitimate and all persons have the right to engage in this business upon equal terms and conditions. The majority opinion classifies this business with that of the saloon, pawnbrokers and pool halls, which have been held to be mere privileges and not classified as legitimate business. They may be either regulated or dispensed with entirely. This distinction is clearly stated in the case of *Asakura v. Seattle*, 122 Wash. 81, 210 Pac. 30, where we said:

"At the threshold we are met with the necessity of determining whether pawnbroking is a business in which any individual has an inherent right to engage. If it is such, then, of course, the respondent is entitled to the remedy he seeks. Or is pawnbroking a privilege which may be absolutely denied to any one or granted upon such terms and conditions and with such restrictions as the city may impose?"

The sale of oil and gasoline being a legitimate business necessary for the welfare of the community, the ordinance is void because it fails to provide definite rules and conditions under which the business may be conducted. It is left to the arbitrary will of the city council, and thereby fails to give to all citizens equal protection of the law. In the case of *State ex rel. Makris v. Superior Court*, 113 Wash. 296, 193 Pac. 845, after reviewing the authorities, we said:

"All of those decisions were rested upon the principle that an ordinance which authorizes the issuing or withholding of a license to engage in a lawful business, that is, a business which within itself is ordinarily perfectly lawful, and committing to any officer or set of officers the power to decide according to their own notions in each particular case, the question of the propriety of issuing or withholding a license therefor,. and thus deciding who may and who may not engage in such business, is authorizing the exercise of arbitrary power in violation of the guaranty of the fourteenth amendment of the constitution of the United States, that 'No state shall . . . deny to any person within its jurisdiction the equal protection of the law.' In § 12 of article 1 of our state constitution we find the same guaranty, in substance, as follows:

" 'No law shall be passed granting to any citizen, class of citizens, or corporation, other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations.' "