STATE OF MAINE *vs.* JAMES A. PULSIFER.

Franklin.     Opinion December 1, 1930.

*Carll N. Fenderson,* County Attorney, for the State.
*Pulsifer & Ludden,* for respondent.

Sitting: Pattangall, C. J., Dunn, Sturgis, Barnes, Farrington, Thaxter, JJ.

Thaxter, J.   The respondent, a resident of this state, is charged by complaint with fishing in the inland waters of the state without having in his possession the license required by the provisions of Section 14 of Chapter 331 of the Public Laws of 1929. The case is reported to this court on an agreed statement, which admits that the respondent did not have such license but that he did have in his possession the license prescribed by Section 1 of Chapter 121 of the Public Laws of 1923, which had never been revoked because of any act of his: He contends that this license was valid and in force and that under its authority he could lawfully fish as he was doing. The State claims that this license was not then effective, and that he could only fish lawfully, when possessed of the license required by the terms of the later act.  .

Section 2 of the act of 1923 provides that any resident of the state may make written application to the clerk of the city, town or plantation in which he resides for a license to hunt and fish, which

shall be issued to him on the payment of a fee of twenty-five cents. Section 3 of the act provides that:

"Each certificate issued under the provisions of this act shall be valid so long as the registrant remains a citizen of this state."

Chapter 331 of the Public Laws of 1929 revised the fish and game laws of the state and provided for the repeal of all acts or parts of acts inconsistent with its provisions. In this act the requirements, under which licenses for fishing and hunting may be issued, are set forth in separate sections.

Section 14 provides in part as follows:

"No resident of the state over eighteen years of age and no non-resident of whatever age, shall fish in any inland waters of the state except in accordance with the following provisions;"

The provision which, according to the claim of the State, applies to this case requires each resident to purchase a written license from the commissioner or his duly authorized agent, which shall be kept upon the person while fishing or transporting fish and shall be exhibited to any warden on request. Town clerks are appointed such agents and licenses are issued by the clerk of the town in which the applicant resides upon the payment of a fee of sixty-five cents.

Section 16 of the act prohibits the hunting of any wild bird or animal without a license, which shall be kept upon the person while hunting or transporting game and exhibited to any warden on request. The license is issued in the same manner as the fishing license and for the same fee; but a combination fishing and hunting license may be issued for a fee of a dollar and fifteen cents. By the terms of subsection 4 it expires on December thirty-first of the calendar year for which it is issued.

The respondent contends that his license issued under the provisions of the act of 1923, which authorized him to hunt and to fish in accordance with the laws of the state, was still in force in spite of the provisions of the act of 1929, which was in effect at the time when the State alleges that the offense in question was committed.

He claims in the first place that the state, having issued to him a license valid according to its terms and according to the requirements of the act under which it was issued so long as he should remain a citizen of the state, was without power to revoke it, and secondly that if the state had power to revoke it, the act passed in 1929 did not purport to do so. We will consider these two contentions in their order.

A license granted by the state is in no sense a contract or property right, and may be revoked by the sovereignty which granted it at its pleasure and without notice. *State* v. *Cote*, 122 Me., 450; *Bornstein, Appellant*, 126 Me., 532; *Burgess* v. *Mayor and Aldermen of Brockton*, 235 Mass., 95; *Commonwealth* v. *Kinsley*, 133 Mass., 578; *Doyle* v. *Continental Insurance Co.*, 94 U. S., 535.

The respondent contends that the right to fish is a species of property held in trust by the state for the public benefit, and he cites the language of Judge Savage to this effect in the case of *State* v. *Leavitt*, 105 Me., 76, 79. That very decision holds, however, that such right is subject to regulation by the state, and the respondent concedes in his brief that the state can require a license before the privilege is exercised. The power to grant a license presumes the right to revoke it. In *Doyle* v. *Continental Insurance Co.*, supra, the Court said at page 540: "The correlative power to revoke or recall a permission is a necessary consequence of the main power. A mere license by a state is always revocable." Counsel concedes that licenses are in some instances revocable, but claims that the rule does not apply to the case of the fisherman. No peculiar sanctity, however, attaches to his privilege and the case of *State* v. *Cote*, supra, involved the suspension of a fishing license.

The principle of law is clear that the state could here revoke the permission which it had granted, and the respondent in accepting a license took it subject to that condition.

Did the provisions of Chapter 331 of the Public Laws of 1929 operate to revoke licenses granted under the authority of Chapter 121 of the Public Laws of 1923? We think that this question must be answered in the affirmative. It is quite true that the legislature in the later act does not expressly provide for the revocation of

licenses outstanding under the former. Such express declaration is not however necessary, if it is obvious that such is the intent. When the legislature in 1929 provided that no one should fish until licensed under the new act, it automatically revoked all other licenses. Counsel cites the case of *Foster* v. *Dow*, 29 Me., 442. The decision of that case is entirely correct. It merely holds that the repealing of the act granting peddlers' licenses in force for one year does not operate as a revocation of licenses already issued, when it is not inferable that such was the intention of the legislature. It is pointed out that a right given by statute may exist after the repeal of the act. The court uses these significant words at page 447 — "the law of 1846 does not require the license to be obtained under that act." The law of 1846 was the later act. In the instant case the law of 1929 is the later act and does require that the license be obtained under its provisions; and the decision which we here announce is in entire accord with the opinion in *Foster* v. *Dow*.

The provisions of the law of 1929, in so far as they govern the issuing of licenses, are inconsistent with the provisions of the earlier act and obviously were intended to supersede them. The amount of the fee is raised. The old license remained in force so long as the holder remained a citizen of the state; the new license, at least in so far as the hunting privilege is concerned, expires with the calendar year. The later act provides in express terms for the repeal of all acts or parts of acts inconsistent with it; and, even though this provision were absent, there would be a repeal of this part of the act by implication. The case is not unlike that of *Staples* v. *Peabody*, 83 Me., 207, in which the court held that the provisions of the lobster act of 1887 were repealed by the inconsistent provisions of the act of 1889. We can well adopt, as applying to the 1929 law, the language of the court in that case at page 211: "We think this must be taken as the last declaration of the will of the legislature."

*Judgment for the State.*