WIRT NULTER *v.* STATE ROAD COMMISSION OF WEST VIRGINIA *et al.*

(CC 579)

Submitted September 21, 1937. Decided October 26, 1937.

RILEY, JUDGE, dissenting

*Wyatt & Randolph,* for plaintiff.
*Clarence W. Meadows,* Attorney General, and *Forrest B. Poling,* Assistant Attorney General, for defendants.

HATCHER, JUDGE:

This certification refers to us the constitutionality of the "Financial Responsibility" statute, Acts 1935, Chapter 61, Section 3. It provides that upon the failure of a person for thirty days to satisfy a final judgment against him of more than fifty dollars, rendered by a court of competent jurisdiction within the United States or Canada, for damages on account of personal or property injury resulting from the operation of a motor vehicle, his license shall be forthwith suspended by the state road commissioner upon receiving from the court of entry a certified copy of the judgment, together with a certificate of its finality and non-payment, etc. The commissioner imposed the suspension authorized by this statute upon plaintiff for his failure to satisfy a New York judgment against him of $159.70, admittedly resulting from his operation of an automobile. He seeks in this suit to have the order of suspension set aside. The circuit court was of opinion to sustain a demurrer to his bill.

The validity of the New York judgment is not questioned, and its finality is admitted. Plaintiff's counsel attack only the statute. They contend that it was fathered by insurance companies, is discriminative, denies plaintiff due process of law and is accordingly unconstitutional.

The Act itself gives no intimation of a mercenary paternity and no decision or other authority is cited in sup-

port of that charge. Even so, when a state is legally empowered to enact a law, "the reason by which it is influenced in doing it cannot be inquired into." *Doyle* v. *Ins. Co.*, 94 U. S. 535, at 541, 24 L. Ed. 148. Accord: *Pence* v. *Bryant,* 54 W. Va. 263, 46 S. E. 275. The question is one of power, not inducement.

The declared purpose of this statute is to protect the public on the highways against the operation of motor vehicles by "reckless and irresponsible persons" and thus is referable to the police power of the state. This is the power of government inherent in every sovereignty to enact laws, within constitutional limits, to promote the general welfare of its citizens. The License Cases, 5 Howard (U. S.) 504, 583; *Hinebaugh* v. *James,* 119 W. Va. 162, 192 S. E. 177; Willoughby, Constitution (2d Ed.), section 1176. A homily on this power is not requisite; two quotations from our highest legal authority will evince that the state may lawfully legislate on the instant subject. (1) "There are certain fundamental principles which * * * are not open to dispute * * *. Briefly stated those principles are * * * that such a power in the State generally referred to as its police power is not granted by or derived from the Federal Constitution but exists independently of it by reason of its never having been surrendered by the State to the General Government; that among the powers of the State not surrendered—which power therefore remains with the State—is the power to so regulate the relative rights and duties of all within its jurisdiction as to guard * * * the public safety * * *." *House* v. *Mayes,* 219 U. S. 270, on pp. 281-2, 31 S. Ct. 234, 236, 55 L. Ed. 213. Accord: *In re Rahrer,* 140 U. S. 545, 554-5, 11 S. Ct. 865, 35 L. Ed. 572; *L'Hote* v. *New Orleans,* 177 U. S. 587, 596, 20 S. Ct. 788, 44 L. Ed. 899; *Atlantic C. L. R. Co.* v. *Goldsboro,* 232 U. S. 548, 558, 34 S. Ct. 364, 58 L. Ed. 721. (2) "In the public interest the state may make and enforce regulations reasonably calculated to promote care on the part of all * * * who use its highways." *Hess* v. *Pawloski,* 274 U. S. 352, 356, 47 S. Ct. 632, 633, 71 L. Ed. 1091. Accord: *Kane* v. *New Jersey,* 242 U. S. 160, 167, 37 S. Ct. 30, 61 L. Ed. 222; *Hendrick*

v. *Maryland*, 235 U. S. 610, 622, 35 S. Ct. 140, 59 L. Ed. 385; *Wheeling R. Co.* v. *Triadelphia*, 58 W. Va. 487, 501, 52 S. E. 499, 4 L. R. A. (N. S.) 321; *Carson* v. *Woodram*, 95 W. Va. 197, 201, 120 S. E. 512. That same high authority has said this is "one of the most essential powers of Government and one of the least limitable", and that "the imperative necessity for its existence precludes any limitation upon it when not arbitrarily exercised." *Hadacheck* v. *Sebastian*, 239 U. S. 394, 36 S. Ct. 143, 145, 60 L. Ed. 348, Ann. Cas. 1917B, 927. Its exercise is arbitrary when it disregards, without justification, fundamental rights. However, the Fourteenth Amendment, forbidding a state to pass a law abridging *the privileges* of a citizen, or depriving him of life, liberty, or property *without due process of law*, or denying him *the equal protection of the laws*, does not impair the police power. *Barbier* v. *Connolly*, 113 U. S. 27, 31, 5 S. Ct. 357, 28 L. Ed. 923; *Minneapolis Ry. Co.* v. *Beckwith*, 129 U. S. 26, 9 S. Ct. 207, 32 L. Ed. 585; *Jones* v. *Brim*, 165 U. S. 180, 182, 17 S. Ct. 282, 41 L. Ed. 677; *State* v. *Strauder*, 11 W. Va. 745, 817, 27 Am. Rep. 606; *Peerce* v. *Kitzmiller*, 19 W. Va. 564, 573; *Woods* v. *Cottrell*, 55 W. Va. 476, 489, 47 S. E. 275, 65 L. R. A. 616, 104 Am. St. Rep. 1004, 2 Ann. Cas. 933; *State* v. *Fleming*, 129 Wash. 646, 225 P. 647, 34 A. L. R. 500; *Frazer* v. *Shelton*, 320 Ill. 253, 150 N. E. 696, 43 A. L. R. 1086; 12 C. J., subject Constitutional Law, sections 440, 894 and 962, and the many cases cited in the notes. Due process of law may be afforded administratively as well as judicially. Lawful administrative process is due process equally as much as lawful judicial process. Notice and hearing—"a day in court"— are matters of right in judicial proceedings; but not so, necessarily, in administrative proceedings, which from their character may not require such procedure, or from "imperative necessity" cannot await it. Consequently, a valid exercise of the police power is said to be itself due process of law. Brannon, The Fourteenth Amendment, 167; Willis, Constitutional Law (1937), 727; *Den ex. dem. Murray* v. *Imp. Co.*, 18 How. (U. S.), 272, 280 *et seq.*, 15 L. Ed. 372; *Weimer* v. *Bunbury*, 30 Mich. 201; *Wulzen* v. *Board*, 101 Cal. 15, 35 P. 353, 354-5, 40 Am.

St. Rep. 17; *Mehlos* v. *Milwaukee,* 156 Wis. 591, 146 N. W. 882, 51 L. R. A. (N. S.) 1009, Ann. Cas. 1915C, 1102; *State* v. *Sponaugle,* 45 W. Va. 415, 419, 32 S. E. 283, 43 L. R. A. 727.

A police regulation is also arbitrary if unreasonable. Unfortunately, a definite criterion of reasonableness has not yet been formulated. If a statute is within the legitimate range of the police power, has a fair tendency to accomplish the end proposed, is not unjustly discriminative, and does not destroy nor despoil a particular class, courts should not declare it unreasonable merely because they consider it impolitic or because it will operate harshly upon some individuals. The necessity for the statute and the manner of its enforcement are fundamentally legislative, not judicial, questions. *Missouri P. Ry., Co.* v. *Humes,* 115 U. S. 512, 520, 6 S. Ct. 110, 29 L. Ed. 463; *Sligh* v. *Kirkwood,* 237 U. S. 52, 61, 35 S. Ct. 501, 59 L. Ed. 835; *Standard Oil Co.* v. *Marysville,* 279 U. S. 582, 584, 49 S. Ct. 430, 73 L. Ed. 856; *Hiller* v. *State,* 124 Md. 385, 92 A. 842; *Shea* v. *Ellenstein,* 118 N. J. L. 438, 193 A. 551. Every reasonable presumption must be indulged in favor of the validity of a statute, "and this continues until the contrary is shown beyond a rational doubt. One branch of the government cannot encroach on the domain of another without danger. The safety of our institutions depends in no small degree on a strict observance of this salutary rule." *Sinking Fund Cases,* 99 U. S. 700, 718, 25 L. Ed. 496. Accord: *Road Comm.* v. *County Court,* 112 W. Va. 98, 102, 163 S. E. 815. The legislative latitude in cancelling a license is stated specifically in *Doyle* v. *Ins. Co., supra,* at page 542, of 94 U. S., as follows: "If the State has the power to cancel the license it has the power to judge of the cases in which the cancellation shall be made. It has the power to determine for what causes and in what manner the revocation shall be made."

The operation of a motor vehicle on the public highways is not a natural right, nor is license to do so a contract, or property right, in a constitutional sense. It is merely a conditional privilege which may be suspended

or revoked under the police power, even without a notice or an opportunity to be heard. "* * * revocation of license (automobile) by state board of public roads without hearing does not operate so as to deprive of property without due process." *La Plante* v. *Board,* 47 R. I. 258, 131 A. 641. Accord: *People* v. *Harnett,* 224 N. Y. S. 97; *Burgess* v. *Mayor,* 235 Mass. 95, 126 N. E. 456, 459-460; Babbitt, Motor Vehicle Law (4th Ed.), chapter XI; Berry, Law of Automobiles (7th Ed.), sec. 6.82. On the suspension of licenses, generally, see *State* v. *Pulsifer,* 129 Me. 423, 152 A. 711; *Halsey Stuart Co.* v. *Public Service Commission,* 212 Wis. 184, 248 N. W. 458; *Child* v. *Bemus,* 17 R. I. 230, 21 A. 539, 12 L. R. A. 57; *People* v. *Department of Health,* 189 N. Y. 187, 82 N. E. 187, 13 L. R. A. (N. S.) 894; *Health Dept.* v. *Rector,* 145 N. Y. 32, 40, 39 N. E. 833, 27 L. R. A. 710, 45 Am. St. Rep. 579; *People* v. *Stryker,* 206 N. Y. S. 146, 124 Misc. 1; *Southern R. Co.* v. *Commonwealth,* 159 Va. 779, 167 S. E. 578; *Lemon* v. *Rumsey,* 108 W. Va. 242, 150 S. E. 725; Freund, Police Power, section 24; 37 C. J., subject Licenses, section 112.

The probable inability of some motor vehicle owners to pay the damages resulting from negligent operation is stressed by counsel as making the statute punitive rather than protective, and as not affording the equal protection designed by the Constitution. The statutory punishment should make the impecunious operator more careful, and thus tend to protect the public. Further protection is secured by the statute in this sense; the public will be either compensated for such damages, or no longer exposed thereto by persons unable to pay. And financial responsibility, alone, is not a test of constitutional equality. This very contention, against a New York statute requiring security from persons who operated motor vehicles for hire, was found wanting in *Packard* v. *Banton,* 264 U. S. 140, 44 S. Ct. 257, 68 L. Ed. 596. It is apodictical that the equality required by the Constitution is that of right, not enjoyment. *In re Opinion by the Justices,* 81 N. H. 566, 129 A. 117, 39 A. L. R. 1023; *Watson* v. *Division,* 212 Cal. 279, 284-5, 298 P. 481.

The appalling number of motor accidents on the highways has induced the passage of many statutes throughout the states, regulating vehicular operation, notably, statutes requiring demonstration of ability to operate before obtaining license; suspending license for operating while intoxicated; penalizing an operator for abandoning an accident; imputing to owner of car the negligence of one entrusted with it; giving a lien on a motor vehicle to one injured by its negligent operation; and requiring security from the owner of car for hire. All of these regulations have been upheld as legitimate exercises of the police power. Some were designed to prevent accidents; others to secure compensation for the injured as well as to induce greater operating care. The instant statute is but another attempt to procure the same ends. In regard to a similar statute (proposed), the *Justices of the Supreme Court of Massachusetts*, 251 Mass. 617, 147 N. E. 680, advised the legislature as follows: "The manifest purpose of the proposed act, * * * is to protect the public against injuries upon public highways. The power of the commonwealth over public ways is very broad. We think that the Legislature may declare that no person shall have a license to operate a motor vehicle upon public ways until he has satisfied any outstanding judgment against him founded on previous operation of a motor vehicle. A statute of that nature may have a tendency to prevent conduct by a licensee capable of being the basis of such a judgment, and thus promote the public safety. It would have a tendency to keep off the highway those shown by their conduct to be dangerous to other travelers. It may be thought by the Legislature that such a judgment debtor, who did not do what the law required of him, was not a fit person to be intrusted again with the responsibility of operating a motor vehicle on the public ways. From the viewpoint of the common good and general welfare the proposed statute cannot be pronounced obnoxious to the Constitution. * * * There is no inequality or discrimination in a constitutional sense from the standpoint of the judgment debtor. Those who do not pay their debts arising from their fault in the operation of a motor vehicle on the public way may be classified by the Legis-

lature as not worthy of a license to operate again." This opinion has been accepted, generally, as sound.

*Commonwealth* v. *Funk*, 323 Pa. 390, 186 A. 65, written in 1936, sustains the constitutionality of *a financial responsibility* statute. A footnote thereto states that "at least in twenty-four states there are substantially similar provisions for the revocation or suspension of the operator's license or privilege." We do not find decisions by courts of last resort from all of those jurisdictions, but every decision found sustains the constitutionality of the provisions. *Ex parte Lindley*, 108 Cal. App. 258, 291 P. 638 (cited in annotation 71 A. L. R. 616-17), holding unconstitutional a statute similar to ours, was not the decision of a court of last resort. The reasons advanced in that decision were expressly disapproved by the Supreme Court of California (the court of last resort) in *Watson* v. *Division, supra.* See also *Sheehan* v. *Division*, 140 Cal. App. 200, 35 P. (2d) 359. Accordant decisions are: *La Plante* v. *Board, supra*; *State* v. *Price* (Ariz.), 63 P. (2d) 653; *Garford Trucking* v. *Hoffman*, 114 N. J. L. 522, 177 A. 882; *Jones* v. *Harnett*, 247 App. Div. 7, 286 N. Y. S. 220; *Munz* v. *Harnett*, 6 F. Supp. 158.

Counsel for petitioner finally contend that, irrespective of the state's right to make a domestic occurrence cause for suspension of a license, it is an unreasonable extension of the police power to make an extrastate occurrence such cause. That contention overlooks the fact that a state is not limited to its own experience in guarding the public safety; it may, and frequently does, take cognizance of what happens in other states. This has been done many times in quarantines against infectious diseases of animal and plant life in other states. Negligence in motor operation may be demonstrated as well without, as within, the state; and when without, and not compensated for, no sound reason appears why the state should not take steps tending to prevent an intrastate recurrence of such a casualty. This is not an extension of the police power beyond the state, as contended, but is simply its exercise within the state because of an out-of-state occurrence.

The judicial proceeding against the plaintiff in New York is not authenticated in form and manner prescribed by Congress, Rev. Stats., sec. 905; nor is that authentication required by our statute. Consequently, we have not considered what effect herein, if any, the full-faith-and-credit-clause of the Constitution (Art. IV, sec. 1) might have.

The New York judgment was not certified to the Commission in the form and manner prescribed by the statute. But since that question is not raised by plaintiff, and his bill admits, in effect, the matters required to be certified, we will treat the insufficiencies of the certification as waived.

The ruling of the circuit court is affirmed.

*Affirmed.*

RILEY, JUDGE, dissenting:

It is with regret that I dissent from the majority opinion in so far as that opinion undertakes to extend the operation of the "Financial Responsibility Law," contained in Chapter 61 of the Acts of the West Virginia Legislature of 1935, to a judgment rendered by a court outside the territorial limits of the State of West Virginia. This act provides that upon the rendition of a judgment against an automobile operator, a resident of the State of West Virginia, by a court in West Virginia or any of her sister states or the Dominion of Canada, which judgment is not satisfied, and a certified copy thereof having been filed with the State Road Commissioner of the State of West Virginia, his operator's license shall be withdrawn. The statute contains no provision for notice or hearing.

I am fully aware of the necessity of having competent automobile drivers on the roads of West Virginia, and the other states of the country. I am equally alert to the fact that legislation such as this, no matter from what source it came, no matter what motive prompted it into existence, is dangerous in its character and is contrary to the fundamental political philosophy of the United States,

as I view that philosophy. The majority opinion has cited no case in which the operation of a financial responsibility act, enacted by any state, has been made to extend beyond the territorial limits of the state in which the judgment is rendered. And I note also that the Attorney General, both in oral argument as well as in the written brief, has stated no case in which such an act has been construed by any court in the United States to that extent. May not the reason lay in the fact there is no authority in the United States which has gone so far as the majority opinion of this Court is undertaking to go? At least, I have found no decision of a court of last resort.

This financial responsibility act, includes not only the states belonging to the American Union, but it extends to the Dominion of Canada. In discussing this act, we must look beyond the viewpoint of the instant case. If such an act applies to a judgment of the Dominion of Canada, why cannot it be enlarged to extend to a judgment of a South American Republic? Why not to a judgment of the Republic of France, or Great Britain? The consideration of this question involves no middle ground, the logic is right there; we are dealing with the simple question as to whether or not a resident of West Virginia, without notice or hearing, is subjected to having his operator's license taken away because of an unsatisfied judgment rendered by a sister state or the Dominion of Canada. If the power resides in the Legislature of this State to give such drastic recognition and effect to a judgment of a sister state or the Dominion of Canada, then the power can be extended to every country in the world without regard to the fact that some countries do not have the constitutional inhibitions, guarantees and rights which have been the heritage of the people of this country. I think that the able and well written majority opinion, in so far as it recognizes the effect of the New York judgment on a West Virginia resident, results, if not in technical theory, certainly in actual practice, in the extension of the police power of a state beyond its territorial limits.

The majority opinion suggests that one state may profit from the actions of a citizen in another state. This, so I suggest with deference, is misinterpretation of the underlying philosophy of American Constitutional Government. Under our system of government, with the Federal Government on one side and the forty-eight states on the other, the whole plan was designed, and factually it does, constitute a plan whereby one state may profit from the experience of other states. That is to say, a state may enact a law and forty-seven other states may stand by and see the effect of its enactment. Thus, a state may become an experimental station which will result in great good from a governmental view to the other states of the Union. But to extend this effort of experimentation so that a resident of a state may lose an important privilege, by the enactment and enforcement of a law, without an opportunity to be heard in his own state, goes far afield from what was contemplated by the framers of the Constitution. I hesitate to join hands with my distinguished brethren to let West Virginia go in the vanguard to establish a rule of law which is dangerously apt to break down the territorial governmental limits of the various states of the Union and which will give rise to a situation whereby American citizens traveling from one state to the other will not feel safe because they will not, in other states, have the opportunity in case of a road disaster to be heard before a court and jury, or an administrative tribunal of their own state before they lose a valuable privilege. The danger of the enforcement of this act is that it may give rise to those speed traps which, in the early days of the automobile, rendered most difficult for people to travel much beyond the confines of their own city.

While we assume, and rightly so, that all public officials will perform their full duty with kindness, courtesy and integrity, and with a full concern for the rights of all people of the United States, without regard to their residence, we must remember that the human element enters into government as well as business. The extension of a law like this beyond the territorial limits of the state into other states, beyond the territorial limits of the

United States into the Dominion of Canada, and possibly by future legislation, beyond the United States into still other countries, may result in a system of legalized black-mail perhaps not fully contemplated by those responsible for the enactment of the statute.

For these reasons, I favor granting the writ.