STANDARD OIL COMPANY ET AL. *v.* CITY OF MARYSVILLE ET AL.

No. 545. Argued April 19, 1929.—Decided May 20, 1929.

Messrs. *Earle W. Evans* and *Thomas F. Doran,* with whom *Messrs. L. L. Stephens, R. R. Vermilion, Joseph G. Carey, W. F. Lilleston, Henry V. Gott, Roy T. Osborn, Clayton E. Kline,* and *M. F. Cosgrove* were on the brief, for petitioners.

Messrs. *Edgar C. Bennett* and *Harry W. Colmery* for respondents.

*Messrs. James M. Beck, Ira Jewell Williams,* and *Francis Shunk Brown,* filed a brief on behalf of American Petroleum Institute and The Atlantic Refining Company, as *amici curiae,* by special leave of Court.

MR. JUSTICE STONE delivered the opinion of the Court.

This case is here on certiorari, 278 U. S. 596, to review a judgment of the Court of Appeals for the Eighth Circuit, reversing a decree of the District Court for Kansas which enjoined the enforcement of an ordinance of respondent, the City of Marysville, as in violation of the Fourteenth Amendment of the Federal Constitution. 27 F. (2d) 478.

The ordinance, No. 350, of October 8, 1923, requires that all tanks within the city limits used for the storage of petroleum products or other inflammable liquids shall be buried at least three feet underground. Tanks of a capacity of 500 gallons or less, if used for the storage of crude oil, distillate or fuel oil, and of less than ten gallons, if used for the storage of gasoline, kerosene or naphtha, are exempted from this requirement. Violation of the ordinance is punishable by a fine of $25.00 for each day of its continuance. Petitioners, who are dealers in petroleum products licensed under a former ordinance, have each for many years maintained within the city limits two tanks for the storage of gasoline and kerosene of approximately 12,000 gallons capacity each. They assert that compliance with the ordinance will impose upon them a large and unnecessary expense and that the ordinance is so arbitrary and capricious as applied to them as to deprive them of their property without due process of law.

At the trial before a master voluminous evidence was taken, much of it conflicting, speculative and theoretical in character, concerning the relative safety of the storage

of petroleum products above and beneath the surface of the earth and their relative likelihood of ignition, and danger to life and property in the vicinity if ignited, when so stored. The master made elaborate findings of fact from which he inferred generally that it is more dangerous, from the standpoint of public safety, to store underground than above, gas, line or kerosene in quantities of ten gallons or more. From this he drew the legal conclusion, adopted by the district court, that the ordinance was so arbitrary and capricious as not to be a permissible exercise of the police power.

We need not labor the point, long settled, that where legislative action is within the scope of the police power, fairly debatable questions as to its reasonableness, wisdom and propriety are not for the determination of courts, but for that of the legislative body on which rests the duty and responsibility of decision. *Zahn* v. *Board of Public Works,* 274 U. S. 325, 328; *Hadacheck* v. *Los Angeles,* 239 U. S. 394, 408–412, 413–414; *Euclid* v. *Ambler Realty Co.,* 274 U. S. 365, 388; *Jacobsen* v. *Massachusetts,* 197 U. S. 11, 30; *Laurel Hill Cemetery* v. *San Francisco,* 216 U. S. 358, 365; *Cusack Co.* v. *City of Chicago,* 242 U. S. 526, 530; *Price* v. *Illinois,* 238 U. S. 446, 451. To determine that the present ordinance was a permissible exercise of legislative discretion, as thus defined, we need not go beyond those findings of the master to which petitioners offer no serious challenge.

The master found that gasoline and kerosene stored in large quantities are dangerously inflammable substances, as we judicially know, *Pierce Oil Corporation* v. *City of Hope,* 248 U. S. 498, 500, which, when ignited, are a menace to life and property in the vicinity; that even with the use of the most modern safety devices, fires or explosions of such storage tanks occur and that within the four years preceding the trial five disastrous fires of gasoline

storage stations had occurred in Kansas, in two of which gasoline tanks had exploded, in one case striking and burning a building 475 feet away, killing nine people, wounding twenty-six more and burning several other houses. His findings show that within an even smaller radius from petitioners' tanks, or within the same or adjacent blocks, there are many buildings, including residences, a hotel, warehouses and garages, some of wooden structure, and gasoline and kerosene storage tanks of 75,000 gallons capacity, and that the principal business street of the town is within two blocks of the Standard tanks. From local conditions and recent public improvements the master found it reasonable to conclude that there would be increased residential building in the vicinity.

The objection which petitioners make to the storage of gasoline and kerosene in tanks buried under ground is that through the effect of electrolysis and corrosion caused by acid in the soil, and the possible " floating out " of the tanks, leaks are likely to occur, difficult to discover, by which the gasoline might penetrate through the earth into sewers, wells and basements, contaminating the water and causing explosions. But the master found that conditions which produce electrolysis are not present in the City of Marysville; that only a slight percentage of acid was found in the soil there, and although there was more chance of corrosion of metal under ground at the Standard Oil property than at the Sinclair tanks, it might take a term of years for it to take place. The findings also show that tanks already placed underground in the vicinity in compliance with the ordinance and which it appeared had been in successful operation for more than two years, had not " floated out " during periods of heavy rainfall and the danger of floating could be overcome by proper drainage and by anchoring down the tanks: that the tanks buried

in compliance with the ordinance would rest on a level below the sewers; that there were no wells in the vicinity and that the soil there had been shown by experiment to be impervious to gasoline. It was also found that the danger from fire or explosion due to lightning, which causes many fires in gasoline storage, and from static electricity, is less with under ground than above ground tanks and that the base rate of insurance on storage tanks of gasoline and kerosene under ground is 50% of that for tanks above.

The facts that the tanks of petitioners within the city limits have been operated successfully above ground; that appliances used by them are of the best type; that fires in connection with their many tanks located elsewhere have been relatively infrequent, and numerous others found by the master, were properly for the consideration of the city council in determining whether the ordinance should be enacted, but they fall far short of withdrawing the subject from legislative determination or establishing that the decision made was arbitrary or unreasonable. The passage of the ordinance was within the delegated powers of the city council, *City Service Oil Co.* v. *Marysville,* 117 Kan. 514, and it acted within its constitutional province in dealing with the matter as one affecting public safety. *Pierce Oil Corporation* v. *City of Hope, supra.* From the facts as found it might, in the exercise of a reasonable judgment, have at least concluded that the danger of ignition to the tanks placed under ground, under the conditions prevailing at Marysville, was no greater than when placed above ground and that in the event of ignition the danger to life and property was very much less.

We may not test in the balances of judicial review the weight and sufficiency of the facts to sustain the conclusion of the legislative body, nor may we set aside the ordinance because compliance with it is burdensome. *Chicago & Alton R. R.* v. *Tranbarger,* 238 U. S. 67, 77; *Hadacheck* v. *Los Angeles, supra; Rast* v. *Demen & Lewis,* 240 U. S.

342. It does not preclude petitioners from locating their storage tanks without the city limits. Hence, the burden imposed upon them cannot be greater or otherwise more objectionable than that imposed by the enforced removal from cities by legislative action of dangerous or offensive trades or businesses. See *Pierce Oil Corporation* v. *City of Hope, supra; Hadacheck* v. *Los Angeles, supra; Reinman* v. *Little Rock,* 237 U. S. 171; *Euclid* v. *Ambler Realty Co., supra; Fischer* v. *St. Louis,* 194 U. S. 361; *Laurel Hill Cemetery* v. *San Francisco, supra.*

We have considered but do not discuss other objections to the ordinance which are without merit.

*Affirmed.*