## S. H. KRESS & CO. et al. v. JOHNSON, Governor of Colorado, et al.*
### No. 10567.

District Court, D. Colorado.
July 24, 1936.

*Decree affirmed 57 S. Ct. 49, 81 L. Ed. ——.

Paul W. Lee, George H. Shaw, and Donald C. McCreery, all of Denver, Colo., for plaintiffs.

Paul P. Prosser, Atty. Gen., Norris C. Bakke, Deputy Atty. Gen., and Hudson Moore, of Denver, Colo., for defendants.

Before PHILLIPS and McDERMOTT, Circuit Judges, and VAUGHT, District Judge.

PHILLIPS, Circuit Judge.

This is a suit to enjoin the defendants from enforcing, as against the plaintiffs, chapter 118, p. 433, Colo.Sess.Laws 1935, set out in Appendix A to this opinion, and particularly the provisions thereof defining a restaurant and requiring a license to operate a restaurant, on the ground the act abridges the privileges and immunities of plaintiffs as citizens of the United States, deprives them of their property without due process of law, and denies them the equal protection of the laws.

Section 2(b) of the act reads as follows:

" 'Food' shall mean any substance used, or intended to be used, for human consumption, when the same is prepared for consumption to be consumed upon the premises where sold, which, among other things, shall include all meat, fish, vegetables, bread and condiments, whether simple, mixed or compounded, but shall not include soft drinks, ice cream, or ices, and confections."

Section 2(c) thereof reads as follows:

" 'Restaurant' shall mean an establishment provided with special space and accommodations wherein, in consideration of payment, meals are habitually furnished to guests, or a place where food is prepared for human consumption to be consumed upon the premises, and whose principal business is the sale of meals, and in which room nothing is sold excepting meals, food, drink and tobaccos. Any establishment connected with any business whatsoever, excepting the hotel business and railway dining cars or any room in any place whatsoever, wherein any business is conducted excepting the sale of meals, foods, drinks, and tobaccos, or hotel business, is hereby declared not to be a restaurant."

Section 3 thereof reads in part as follows:

"From and after a period of thirty (30) days after the effective date of this Act, it shall be unlawful:

"(a) For any person to conduct a 'restaurant' without having obtained a license so to do from the State Board of Health and in accordance with the provisions of this Act.

"(b) To sell or serve to any person or to the public, any 'food' except the same shall be sold or served in a licensed 'restaurant,' as defined in this Act; Provided, however, that nothing in section 3 of this Act shall prohibit or limit the operation of private boarding houses, or the serving of food by individuals, organizations or charitable institutions, engaging only in the occasional sale or serving of food."

Each of four of the plaintiffs owns and operates one or more "variety" stores in Colorado where various kinds of merchandise are carried, offered for sale and sold.

Each of the other plaintiffs owns and operates in Colorado one or more drug stores where the usual drugs, medicines, sundries and merchandise carried by drug stores, are kept, offered for sale and sold or dispensed.

Each plaintiff in the one or more stores operated by him or it, in the same sales room where the general business is conducted, operates a soda and lunch department as an integral and component part of his or its business, where food and soft drinks and confections are sold and served for consumption on the premises.

The plaintiffs operate and maintain their soda and lunch departments in a sanitary manner and are willing to obey and comply with any reasonable sanitary regulation.

Their principal objection is to the requirement that their soda and lunch departments severally shall be conducted as a separate establishment and in a room separate and apart from the room in which

the other departments of their respective businesses are conducted.

Plaintiffs sought both a temporary and permanent injunction.

A three-judge court was assembled and after a hearing a temporary injunction was granted.

The court suggested that in view of the uncertainty of the language of section 2(c) and the doubt existing in the minds of the judges of the court as to the proper construction thereof, that the defendants seek a construction of the act by the Colorado Supreme Court under section 3 of article 6 of the Colorado Constitution.

This suggestion was followed and resulted in two opinions by the Colorado Supreme Court (In re Interrogatories of Governor, 97 Colo. 587, 52 P.(2d) 663, 667) set out in part in Appendix B.

In its first opinion the Colorado court in part said:

"The major objective [of the act], as we perceive, premised on public health considerations, was to prevent the operation of a restaurant in a room where merchandising is carried on. It inhibits none, regardless of his other activities, or of what might be regarded as the principal one, from engaging in the restaurant business; but if he elects to be both merchant and restaurateur he must conduct the two businesses in separate rooms."

It follows from these opinions that we must view the act as requiring each plaintiff to conduct his lunch business in a room separate and apart from the room or rooms in which the other departments of his or its business are conducted, and that there may be connecting door or doors between the room in which the restaurant department is conducted and the room or rooms in which other departments of the business are conducted.

After the decisions by the Colorado Supreme Court the plaintiffs asked leave to introduce evidence in support of the allegations of their bill. A special master was appointed to hear the evidence and report the same to the court without recommending findings of fact or conclusions of law.

The defendants orally stipulated that the temporary injunction might remain in force pending the final hearing.

The evidence was taken and has been reported to the court, both a full transcript and a narrative thereof, and the cause has been submitted for final disposition on written briefs.

It is well settled that legislation to protect the public health lies within the police power of the state. House v. Mayes, 219 U.S. 270, 282, 31 S.Ct. 234, 55 L.Ed. 213; California Reduction Co. v. Sanitary Reduction Works, 199 U.S. 306, 26 S.Ct. 100, 50 L.Ed. 204.

Counsel for plaintiffs, however, contend the requirement that the restaurant business be conducted in a separate room has no reasonable relation to the public health or safety and is arbitrary, capricious and unreasonable.

While there was a sharp conflict in the opinion of experts in the field of health, hygiene and sanitation, there is substantial evidence that the requirement as to a separate room will tend to promote and protect the public health. Had the same evidence been before the legislature, it could have found either way on the issue and its finding would have been supported by substantial evidence.

Furthermore, despite the opinions of experts to the contrary, we regard the requirement, that restaurants as defined in the statute be conducted in a room separate from the room or rooms in which other departments of a business establishment are conducted, has a reasonable relation to the public health. Such a room can more readily be kept clean and sanitary; it can be kept more free from dust and germ-carrying flies; and, as a less number of persons will enter the room than will enter the general business establishment there will be less of sneezing and coughing therein which all the experts admit may contaminate food. Persons entering a dining room are more apt to be careful of the welfare of others than they would be in a general business establishment.

Such being the factual situation, what is the province and duty of the court in the premises?

In Standard Oil Company v. Marysville, 279 U.S. 582, 49 S.Ct. 430, 431, 73 L.Ed. 856, the court said:

"We may not test in the balances of judicial review the weight and sufficiency of the facts to sustain the conclusion of the legislative body, nor may we set aside the ordinance because compliance with it is burdensome."

In Borden's Farm Products Company v. Ten Eyck, 297 U.S. 251, 56 S.Ct. 453, 456, 80 L.Ed. 669, the court said:

"In the light of the facts found, the Legislature might reasonably have thought trade conditions existed justifying the fixing of a differential. Judicial inquiry does not concern itself with the accuracy of the legislative finding, but only with the question whether it so lacks any reasonable basis as to be arbitrary."

In Sproles v. Binford, 286 U.S. 374, 52 S.Ct. 581, 585, 76 L.Ed. 1167, the court said:

"When the subject lies within the police power of the state, debatable questions as to reasonableness are not for the courts but for the Legislature, which is entitled to form its own judgment."

In Radice v. New York, 264 U.S. 292, 44 S.Ct. 325, 326, 68 L.Ed. 690, the court said:

"Where the constitutional validity of a statute depends upon the existence of facts, courts must be cautious about reaching a conclusion respecting them contrary to that reached by the Legislature; and if the question of what the facts establish be a fairly debatable one, it is not permissible for the judge to set up his opinion in respect of it against the opinion of the lawmaker. The state Legislature here determined that night employment of the character specified was sufficiently detrimental to the health and welfare of women engaging in it to justify its suppression; and, since we are unable to say that the finding is clearly unfounded, we are precluded from reviewing the legislative determination."

In Price v. Illinois, 238 U.S. 446, 35 S.Ct. 892, 894, 59 L.Ed. 1400, the validity of a statute prohibiting the sale of food preservatives containing boric acid was challenged. The court said:

"The contention of the plaintiff in error could be granted only if it appeared that by a concensus of opinion the preservative was unquestionably harmless with respect to its contemplated uses; that is, that it indubitably must be classed as a wholesome article of commerce so innocuous in its designed use and so unrelated in any way to any possible danger to the public health that the enactment must be considered as a merely arbitrary interference with the property and liberty of the citizen. It is plainly not enough that the subject should be regarded as debatable. If it be debatable, the legislature is entitled to its own judgment, and that judgment is not to be superseded by the verdict of a jury upon the issue which the legislature has decided."

See, also, Bayside Fish Flour Co. v. Gentry, 297 U.S. 422, 56 S.Ct. 513, 80 L.Ed. 772.

Counsel for plaintiffs strongly rely upon Borden's Farm Products Company v. Baldwin, 293 U.S. 194, 55 S.Ct. 187, 79 L.Ed. 281. While that case fully justifies the hearing of evidence in the instant case, we do not find anything in the language of the opinion that is contrary to the principles above stated or which would justify us in weighing conflicting evidence on the issue decided by the legislature. Our sole inquiry is whether a rational factual basis for the legislative requirement is so wanting as to make it unreasonable and purely arbitrary.

The burden of establishing the want of such a factual basis and that the statute is unreasonable and arbitrary is on the plaintiffs. Borden's Farm Products Company v. Baldwin, 293 U.S. 194, 209, 55 S.Ct. 187, 79 L.Ed. 281; Powell v. Pennsylvania, 127 U.S. 678, 684, 8 S.Ct. 992, 1257, 32 L.Ed. 253; Weaver v. Palmer Brothers Company, 270 U.S. 402, 410, 46 S.Ct. 320, 70 L.Ed. 654; Metropolitan Casualty Ins. Co. v. Brownell, 294 U.S. 580, 584, 55 S.Ct. 538, 79 L.Ed. 1070. Plaintiffs have not met that burden. The most that can be said is that the evidence leaves the question whether the provisions of the statute here challenged will promote and protect the public health, fairly debatable. Such being the factual situation we cannot substitute our judgment for that of the legislature and say that the statute is unreasonable and arbitrary.

Counsel for plaintiffs assert the exceptions written into the act result in unreasonable and arbitrary classifications.

When the classification made by the legislature is challenged, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of the existence of that state of facts, and one who assails the classification has the burden of showing by resort to common knowledge or other matters which may be judicially noticed, or to other legitimate proof, that the action is arbitrary. Borden's Farm Products Co. v. Baldwin, 293 U.S. 194, 209, 55 S.Ct. 187, 79 L.Ed. 281; Rast v. Van Deman & Lewis Co., 240 U.S. 342,

357, 36 S.Ct. 370, 60 L.Ed. 679, L.R.A. 1917A, 421, Ann.Cas.1917B, 455.

But here again the scope of the judicial review is limited. If the evidence, or conclusions drawn therefrom, leaves it fairly debatable as to whether there is a reasonable basis for classification, the courts may not override the legislative determination. To warrant the court in holding that the classification offends against the Equal Protection Clause, the proof must show that the classification is wholly without any rational basis and is essentially arbitrary. Rast v. Van Deman & Lewis Co., supra; Borden's Farm Products Co. v. Baldwin, supra; Whitney v. California, 274 U.S. 357, 369, 47 S.Ct. 641, 71 L.Ed. 1095.

Counsel say that the exception as to soft drinks, ice cream or ices, and confections, includes milk, and that it, of all foods, is most susceptible to contamination. But milk is kept in closed containers and is usually served directly therefrom to the customer at the counter or table. The place where greatest care must be used is at the dairy and up to the point where it is sealed in the container. Thereafter it is reasonably safe against contamination and is not likely to become unwholesome, if the container is clean when filled, is kept sealed and proper temperature is maintained.

It is urged that hotels, boarding houses and railway dining cars may not be excluded by any rational basis of classification. None of these engages in the sale of general merchandise and normally and customarily maintain separate dining rooms where only articles of food, drink and tobaccos are sold.

Furthermore, a statute does not violate the equal protection clause merely because it is not all-embracing. The legislature is free to recognize degrees of harm and may confine its restrictions to those classes of cases where the need is deemed to be clearest. Whitney v. California, 274 U.S. 357, 47 S.Ct. 641, 71 L.Ed. 1095; People of State of New York ex rel. Bryant v. Zimmerman, 278 U.S. 63, 73, 74, 49 S.Ct. 61, 73 L.Ed. 184, 62 A.L.R. 785; Bayside Fish Flour Co. v. Gentry, 297 U.S. 422, 56 S.Ct. 513, 516, 80 L.Ed. 772.

We are of the opinion that plaintiffs failed to establish that the classifications adverted to are without rational basis and essentially arbitrary.

Action of the legislature under the police power and within the range of legislative discretion cannot be set aside because it is burdensome. Sproles v. Binford, 286 U.S. 374, 389, 52 S.Ct. 581, 76 L.Ed. 1167; Standard Oil Company v. Marysville, 279 U.S. 582, 586, 49 S.Ct. 430, 73 L.Ed. 856.

With the wisdom or expediency of the statute we are not concerned. Those are questions exclusively for legislative determination. Nebbia v. New York, 291 U.S. 502, 537, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469; Kansas Gas & Electric Co. v. City of Independence (C.C.A.10) 79 F. (2d) 32, 42, 100 A.L.R. 1479.

Finally, counsel assert that under the act food may be lawfully sold and served for consumption on the premises only in a "licensed" restaurant, that only a restaurant as defined in the act may obtain a license; that under section 2(c) "any establishment connected with any business whatsoever, * * * wherein any business is conducted excepting the sale of meals, foods, drinks and tobaccos * * * is * * * not * * * a restaurant," that the state court in its first opinion construed the word "connected" not to be referable to ownership, management or other like connection or association with another business; that therefore it must mean a physical connection, such as communicating doors; and that to inhibit a physical connection is unreasonable and arbitrary. They further assert that the decisions of the state court hold whether there may be such connecting doors is left to the determination of the administrative body charged with the enforcement of the act, and that the act contains no standard to guide the administrative body in making such determination.

It was largely because of the provision defining what is not a restaurant that we granted the temporary injunction. If we could regard the question as at large there would be much force to counsel's argument, but we cannot accept counsel's interpretation of the state court decisions or view the question as longer an open one. We think that the second decision categorically answered the question whether there may be such connecting doors, in the affirmative; and that we must now accept the view that the sole requirement of section 2(c) is that the restaurant must be conducted in a separate room and that it does not inhibit physical connections between that room and other rooms of the same business establishment. Should the administrative body undertake to place a

different construction on the act, the courts will be open to plaintiffs to seek protection against arbitrary requirements.

A decree will be entered dissolving the temporary injunction and dismissing the bill. The costs will be assessed against the plaintiff.

## APPENDIX A.

### Chapter 118, Session Laws 1935.

#### Foods.

#### Restaurants—Public Health.

"An Act relating to foods; to provide for the public health and safety by licensing places where food is prepared for human consumption, to be consumed on the premises, providing regulations, restrictions and conditions under which food may be prepared and sold for consumption therein; providing for the administration, disposition of funds, and penalties for the violation of the provisions of this act.

"Be it enacted by the General Assembly of the State of Colorado:

"Section 1. *Purpose.* The control and regulation of premises or places wherein food is prepared and sold or served for consumption on such premises; the establishment of standards of purity for foods; and the enforcement of sanitary safeguards imposed upon food handlers, being necessary, this Act shall be deemed an exercise of the police powers of the State for the protection of the social welfare and the health of the people of the State of Colorado.

"Section 2. *Definitions.* As used in this Act;

"(a) 'Person' shall mean natural person, partnership, co-partnership, association, company, corporation, organization, or manager, agent, servant, officer or employee of any of them.

"(b) 'Food' shall mean any substance used, or intended to be used, for human consumption, when the same is prepared for consumption to be consumed upon the premises where sold, which, among other things, shall include all meat, fish, vegetables, bread and condiments, whether simple, mixed or compounded, but shall not include soft drinks, ice cream or ices, and confections.

"(c) 'Restaurant' shall mean an establishment provided with special space and accommodations wherein, in consideration of payment, meals are habitually furnished to guests, or a place where food is prepared for human consumption to be consumed upon the premises, and whose principal business is the sale of meals, and in which room nothing is sold excepting meals, food, drink and tobaccos. Any establishment connected with any business whatsoever, excepting the hotel business and railway dining cars or any room in any place whatsoever, wherein any business is conducted excepting the sale of meals, foods, drinks and tobaccos, or hotel business, is hereby declared not to be a restaurant.

"(d) 'Board' shall mean 'State Board of Health' and its authorized inspectors, agents and employees.

"(e) 'License' shall mean a grant to a licensee to conduct a 'restaurant,' as defined in this Act.

"Section 3. From and after a period of thirty (30) days after the effective date of this Act, it shall be unlawful:

"(a) For any person to conduct a 'restaurant' without having obtained a license so to do from the State Board of Health and in accordance with the provisions of this Act.

"(b) To sell or serve to any person or to the public, any 'food' except the same shall be sold or served in a licensed 'restaurant,' as defined in this Act; Provided, however, that nothing in section 3 of this Act shall prohibit or limit the operation of private boarding houses, or the serving of food by individuals, organizations or charitable institutions, engaging only in the occasional sale or serving of food.

"(c) For any person to violate any of the provisions of this Act, or the sanitary rules and regulations made hereunder, or to violate any of the rules and regulations of the State Board of Health made pursuant to the provisions of this Act.

"Section 4. For the purpose of regulating and controlling 'restaurants' establishing of sanitary conditions therein and the enforcement and administration of this Act, the State Board of Health is hereby designated, empowered, and authorized as the state licensing and inspection agency.

"Section 5. The duties and authority of the State Board of Health shall be as follows:

"(a) To grant, refuse, suspend or revoke licenses provided by this Act.

"(b) To establish a uniform code of sanitary rules and regulations for the preparation, sale and serving of 'food'; to make such other rules and regulations for the effective administration and enforcement of this Act not inconsistent with the provisions of this Act.

"(c) To hear and determine all complaints against licensees, and to admin-

ister oaths, and issue subpœnas to require the presence of person or persons necessary to the determination of any hearing so held.

"(d) To keep in its office a complete record of all the acts and transactions of the Board, which record shall be open to inspection by the public.

"(e) To enforce the provisions of this Act and the code of sanitary rules and regulations, and other rules and regulations made hereunder.

"(f) To cause to be inspected all places licensed by it, at any or all reasonable times.

"Section 6. Any person owning and/or operating a 'restaurant' within this State shall within thirty (30) days after the effective date hereof, make application to the State Board of Health for a license as herein provided. Any other person desiring to own and/or operate a 'restaurant' in this State shall, before undertaking such business, make application to the State Board of Health, as herein provided. Application for licenses under the provisions of this Act shall be made to the State Board of Health, on forms prepared and furnished by the Board, and shall set forth such information as the director may require, including the name and address of the applicant, together with all the other information deemed necessary by the Board. Before granting any license for which application has been made, the Board may visit and inspect the 'restaurant' or property in which the applicant conducts or proposes to conduct his business. The Board may refuse a license for failure to comply with the sanitary code, or other rules and regulations, or, if in its opinion, the premises on which the applicant conducts or proposes to conduct his business do not meet the requirements of this Act. Upon written demand by an applicant who has been refused a license, the Board shall state in writing its reason for such refusal. The refusal of the Board to grant a license according to the provisions of this Act may be reviewed upon application for writ of mandamus or otherwise by any court of general jurisdiction having jurisdiction of the place for which the application for license was made, and if such court shall determine that such action was without good cause, it shall order the Board to issue such license.

"Section 7. Licenses herein provided shall be granted for a period of one calendar year, or portion thereof remaining at the time of making application for said license, but where application is made for a portion of such calendar year there shall be no reduction of the license fees provided herein because of such fact. All licenses shall expire December 31st of the year for which issued and application for the renewal of licenses shall be made during the month of December of each year. Once a license has been granted under the provisions of this Act, the Board may refuse to renew the same only for violations of this Act or the sanitary code or other rules or regulations established hereunder, unless otherwise provided by law.

"Section 8. Licenses herein provided for shall specify the date of issuance, the period which is covered, the name of the licensee, and the place licensed. Such license shall be conspicuously displayed at all times in the place thereby licensed, and all constables, sheriffs and police officers shall see to it that every person selling 'foods' and conducting a 'restaurant' within his jurisdiction has procured a license so to do. The fee for such license shall be Ten Dollars ($10.-00), for restaurants located in cities of the first or second class, and Five Dollars ($5.00) for restaurants located in towns and other political subdivisions.

"Section 9. In addition to any other penalties prescribed by this Act the Board shall have power on its own motion or on complaint, after investigation and hearing, at which the licensee shall be afforded an opportunity to be heard, to suspend and/or revoke any license for any violation of the provisions of this Act, or of any sanitary or other rule or regulation adopted by the Board, or of any of the terms, conditions or provisions of the license by the licensee or any of the agents, servants or employees of such licensee. Notice of suspension or revocation, as well as any required notice of hearing, shall be given by mailing the same, in writing, to the licensee at the address contained in the license. No suspension shall be for a longer period than six (6) months. Whenever a license is suspended or revoked, no part of the fees paid therefor shall be returned to the holder. Suspension or revocation of licenses may be reviewed, upon application for writ of mandamus, or otherwise, by any court of general jurisdiction, having jurisdiction of the place for which the application for license was made, and if such court shall determine that such action was without good cause, it shall order the Board to reinstate such license.

"Section 10. The code of sanitary rules and regulations, hereinbefore provided, shall include provisions for the initial and periodic examination by the

Board, or other competent medical authority, of all employees engaged in the handling of 'foods,' and shall also include provision specifying and regulating the matter of places and the conditions under which 'food' shall be prepared for consumption, and such other sanitary rules as the Board shall deem necessary. Such rules may be modified and changed from time to time. It shall be the duty of every licensee under the provisions of this Act to see that the code of sanitary rules and regulations is enforced in the place for which the license is granted. A licensee failing to enforce such rules and regulations shall be deemed guilty of a misdemeanor and punishable as hereinafter provided in this Act.

"Section 11. Any person violating any of the provisions of this Act or any of the provisions of the sanitary code hereby established shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not to exceed Five Hundred Dollars ($500.-00) or imprisonment in the county jail of not more than ninety (90) days, or both such fine and imprisonment. It shall be the duty of the district attorneys of the several districts of this state to prosecute for violations of this Act as for other crimes and misdemeanors.

"Section 12. All funds and moneys collected under the provisions of this Act shall be paid over daily by the Board to the State Treasurer, and said State Treasurer shall place 10 per centum (10%) of the money so received in the general fund, and the balance credited by him to the 'State Restaurant Fund.' Out of the funds and moneys so received, the State Treasurer shall pay the salaries and expenses of the deputies, inspectors and employees, necessary for the administration of this Act, which expenses, including salaries and otherwise, shall in no event exceed the amount collected. The balance of such fund, not necessary for salaries and expenses of the Board, remaining in the hands of the State Treasurer at the end of any biennial period, shall be credited by him to the general fund of the state. The payment of salaries and expenses as herein provided shall be upon vouchers authorized by the Board and signed by the Auditor of State.

"Section 13. If any provision of this Act or the application thereof to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of the Act which can be given effect without the invalid provision or application, and to this end the provisions of this Act are declared to be severable.

"Section 14. The General Assembly hereby finds, determines and declares this Act necessary for the immediate preservation of the public peace, health and safety.

"Approved April 4, 1935."

APPENDIX B.

"In re Interrogatories of the Governor on Chapter 118, Session Laws 1935.

"Original Proceeding.

"En Banc        Act Held Constitutional

"Hon. Paul P. Prosser, Attorney General,

"Mr. Norris C. Bakke, Deputy Attorney General,

"Mr. Shrader P. Howell, Assistant Attorney General,

"Mr. Hudson Moore, of Counsel,

"Mr. Frank Seydel, amicus curiæ,

"Affirming the constitutionality of the act.

"Messrs. Lee, Shaw & McCreery, amici curiæ,

"Denying the constitutionality of the act.

"Mr. Justice Hilliard delivered the opinion of the court.

"The Governor's questions are:

"1. Does chapter 118, Session Laws of 1935, when properly construed, prevent a person whose principal business is merchandising, or that other than operating a restaurant, from also engaging in the restaurant business?

"2. Does said act, properly construed, permit a dry goods house to go into the restaurant business, although it maintained the restaurant in a separate room, if the dry goods business would be considered its principal business?

"3. Could a dry goods house, or other mercantile concern, operate or conduct a restaurant in a separate room or space suitably partitioned off from the rest of its establishment but with a connecting door or doors, without violating said act?

"4. Does said act or any portion thereof, properly construed, violate either section 3 of article 2, or section 15 of article 2, or section 25 of article 2, of the Constitution of the State of Colorado?

"5. Does said act, properly construed, violate any other provision of the Constitution of the State of Colorado?

"6. Does said act, when properly construed, violate the Fourteenth Amendment to the Constitution of the United States?

"It is urged that the act violates the Constitution in the following particulars: (1) That it denies equal protection

of the law; (2) that it takes property without compensation; (3) that it denies the use of property without due process of law.

"The measure under consideration is based on legislative finding that the preparation and service of meals, in the same room where the sale of merchandise is actively carried on, is inimical to the public health. Police power, the genesis of the General Assembly's action, is inherent in government, and was well known to the common law. 4 Blackstone's Com. 162. 'This power * * * has been said to be as broad as the public welfare. It is an inherent attribute of sovereignty with which the state is endowed for the protection and general welfare of its citizens,' Rowekamp v. Mercantile-Commerce Bank & Trust Co., 72 F.(2d) 852, 858 (Circuit Court of Appeals, Eighth Circuit). 'All authorities agree that the constitution presupposes the existence of the police power, and is to be construed with reference to that fact.' Village of Carthage v. Frederick, 122 N.Y. 268, 273, 25 N.E. 480, 481, 10 L.R.A. 178, 19 Am.St.Rep. 490. The statute claiming our attention is the expression of that branch of the government having primary authority to determine what is requisite to promote and preserve health, safety and morals. Smith v. People, 51 Colo. 270, 117 P. 612, 36 L.R.A.(N.S.) 158; II Cooley's Constitutional Limitations (8th Ed.) p. 1231. Unless by its terms it imports evil, or is calculated to operate arbitrarily, oppressively or unreasonably, courts may not void the act. McLean v. Arkansas, 211 U.S. 539, 29 S.Ct. 206, 53 L.Ed. 315. That in its operation a police measure may increase their labor, decrease the value of their property, or otherwise inconvenience individuals, does not make the act to offend. II Cooley's Constitutional Limitations (8th Ed.) pp. 1228, 1231. By exercise of inherent police power, the sovereign, purposing to promote public health, may fairly and reasonably restrict the use of property. Beveridge v. Harper & Turner Oil Trust Co., 168 Okl. 609, 35 P.(2d) 435. The unrestricted privilege to engage in business or to conduct it as one pleases is not guaranteed by the Constitution. Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469. 'A large discretion is necessarily vested in the legislature, to determine not only what the interests of the public require, but what measures are necessary for the protection of such interests.' II Cooley's Constitutional Limitations (8th Ed.) p. 1231. 'When the subject lies within the police power

of the state, debatable questions as to reasonableness are not for the courts but for the Legislature, which is entitled to form its own judgment, and its action within its range of discretion cannot be set aside because compliance is burdensome.' Sproles v. Binford, 286 U.S. 374, 52 S.Ct. 581, 585, 76 L.Ed. 1167.

"Referring to the contention that the act is discriminatory and void, because it excepts hotels, dining cars, private boarding houses, and the like, from its operation, we think the clause is but declaratory of the obvious. None of the activities mentioned in the exception come within the act's definition of a restaurant. Besides, the power to legislate on the subject is not to be denied altogether because the law does not embrace 'the whole field of possible abuses.' Farmers' & Merchants' Bank v. Federal Reserve Bank, 262 U.S. 649, 43 S.Ct. 651, 656, 67 L.Ed. 1157, 30 A.L.R. 635. See, also, Miller v. Wilson, 236 U.S. 373, 383. 35 S.Ct. 342, 344, 59 L.Ed. 628, L.R.A.1915F, 829; Carroll v. Greenwich Insurance Co., 199 U.S. 401, 26 S.Ct. 66, 50 L.Ed. 246; Consumer's League v. Colorado & So. Ry. Co., 53 Colo. 54, 125 P. 577, Ann.Cas.1914A, 1158; Driverless Car Co. v. Armstrong, 91 Colo. 334, 14 P.(2d) 1098. The legislature 'is free to recognize degrees of harm, and it may confine its restrictions to those classes of cases where the need is deemed to be clearest.' Miller v. Wilson, supra.

"We think the act comes within the competency of the General Assembly, and that it does not violate the specific constitutional provisions, state or federal, to which the Governor has directed our attention. The major objective, as we perceive, premised on public health considerations, was to prevent the operation of a restaurant in a room where merchandising is carried on. It inhibits none, regardless of his other activities, or of what might be regarded as the principal one, from engaging in the restaurant business; but if he elects to be both merchant and restaurateur he must conduct the two businesses in separate rooms. It follows, if explanation be necessary, that questions 1, 4 and 6, we answer in the negative, and question 2, in the affirmative. We regard question 5 as too general to require an answer.

"Considering the variability of situations that may arise in the course of the administration of the act, we doubt the propriety of a categorical answer to question 3, and so withhold it.

"Mr. Justice Burke and Mr. Justice Holland dissent."

14

"No. 13787.

"In re Interrogatories of the Governor Concerning the Constitutionality of Chapter 118, S.L.1935.

"Mr. Justice Holland, dissenting:
"I am unable to agree with the majority opinion in this case.

"As defined in the act, a 'restaurant' is an establishment whose principal business is the sale of meals, and cannot be one which has any other principal business.

"I think the act is arbitrary and unreasonable, is a strained attempt to exercise the police power, and is unconstitutional.

"November 18, 1935."

"On Petition for Modification.

"Hilliard, Justice.
"The Governor and his advisers urge that a more definite answer to interrogatory 3 is 'essential to the determination of this litigation, as contemplated by the federal court,' and call our attention to what the judges of that court said in the course of a hearing there * * *

"We still are of opinion that rather than to anything fundamental, the point emphasized goes to detail of administration, concerning which claimed abuse may have judicial consideration pursuant to section 6 of the act. It was our conception that the variant facts should enter into the determination of the administrative board and of the courts in their examination on review; and that was the sum of our previous answer to the question. But since the rule requires any reasonable construction that will support the validity of the act, in the interest of finality we now answer interrogatory 3 in the affirmative. * * * "