STATE OF NEW JERSEY, PLAINTIFF, v.
PHILIP TROTWOOD, DEFENDANT.

Mercer County Court
Law Division
(Criminal)

July 16, 1976.

*Ms. Marian B. Copeland* for defendant.

*Mrs. Maryanne Bielamowicz,* Assistant Prosecutor, for the State (*Mrs. Anne E. Thompson,* Prosecutor of Mercer County, attorney).

BENNETT, J. C. C. Defendant was convicted in the West Windsor Municipal Court on December 23, 1975 on two counts of hitchhiking, in violation of *N. J. S. A.* 39:4–59. An appeal was taken and a trial *de novo* on the record was held in this court on March 18, 1976.

The relevant facts are these: Sergeant Gregory Eldridge of the West Windsor Police Department testified that on May 22, 1975 at about 12 P.M. he saw defendant hitchhiking on Clarksville Road near the Bell Telephone building. He arrested defendant after he observed him making gestures at a vehicle, which did not stop. He was taken to the police station, where a summons was issued and he was released.

Defendant testified that, at the time of his arrest, he lived in a rooming house in Princeton, was a student at Mercer County Community College, was employed as a part-time gardener at Princeton Junction, and this part-time job was his sole source of income. He testified that the distance between his home and his job was eight to ten miles, that the distance between his home and school was also eight to ten miles, and the distance between the school and his job was five to six miles. He testified that he did not own a car because he could not afford one, and that no public transportation was available between his home, school and job. He also stated that he had attempted to get into car pools between his home, school and job but had been unsuccessful. Defendant testified that he had attempted to find work within walking distance of his home or school, that he attempted to find a place to live within walking distance of his school or work, and to gain admittance to a school within walking distance of his home, but was unsuccessful. He also testified that at the time of his arrest he was making his way from school to his job and that he was standing by a driveway on the side of Clarksville Road for about 45 minutes waiting

for a ride. He said that the shoulder of the road where he was standing was five to six feet wide, was wide enough for a car to pull over without having its wheels on the road, and that he purposely stood there so a car would be able to stop without obstructing traffic in any way.

It was stipulated that the facts surrounding the second arrest for hitchhiking on June 5, 1975 were virtually identical.

The thrust of defendant's argument is a four-pronged attack on the constitutionality of *N. J. S. A.* 39:4–59, which provides:

No person shall stand in a highway for the purpose of or while soliciting a ride from the operator of any vehicle other than a omnibus or a street car.

Defendant contends that the statute is unconstitutional because: (1) the statutory ban on all hitchhiking contained in the statute impermissibly infringes upon and penalizes defendant's constitutionally protected, fundamental right to interstate and intrastate travel; (2) *N. J. S. A.* 39:4–59 is constitutionally invalid in that it impermissibly conditions enjoyment of a fundamental right on suspect criteria; (3) the statute is invalid on constitutional grounds because of its sweeping breadth; (4) the requirements of the statute are not rationally related to the object of the legislation.

All legislative enactments are presumed to be constitutional and the burden is on defendant to prove otherwise. As was setout in *Jamouneau v. Harner,* 16 *N. J.* 500 (1954) *cert.* den. 349 *U. S.* 904, 75 *S. Ct.* 580, 99 *L. Ed.* 1241:

There is a presumption of the constitutional sufficiency of a legislative enactment; and the onus of showing contra is on him who interposes the challenge. [at 515]

It is the opinion of this court that defendant has failed to sustain this burden.

522

■■ The criteria a court is to follow when deciding on the constitutionality of a legislative enactment were succinctly set out by Mr. Justice Heher in *Reingold v. Harper,* 6 *N. J.* 182 (1951):

Where the end is one to which legislative power may properly be directed, it is enough "if it can be seen that in any degree, or under any reasonably conceivable circumstances, there is an actual relation between the means and the end." *Stephenson v. Binford,* 287 *U. S.* 251, 53 *S. Ct.* 181, 77 *L. Ed.* 288 (1932). The wisdom, expediency or policy of a police regulation does not give rise to a justiciable question if the measure is directed to a matter of public concern within the domain of the police power, and the means are reasonable and appropriate to the end in view. The lawmaking body is the sole judge of what is adequate to meet the particular public requirement; judicial interposition is justifiable only where the action taken is arbitrary. The police power is an attribute of sovereignty to serve all the great public needs; and its exercise does not constitute a denial of due process or the equal protection of the law within the concept of the Fifth and Fourteenth Amendments of the Federal Constitution or the due process clauses of our own Constitution, unless it be palpably unreasonable or unduly discriminatory. It is sufficient if there be a rational connection between the means employed and the end sought. Every reasonable presumption is to be made in favor of the validity of the legislative act. Fairly debatable questions as to need and the propriety of the means employed to meet the exigency are within the legislative province. When the subject is comprehended in the police power of the State, "debatable questions as to reasonableness are not for the courts but for the Legislature, which is entitled to form its own judgment." *Sproles v. Binford,* 286 *U. S.* 374, 52 *S. Ct.* 581, 76 *L. Ed.* 1167 (1932).

Persons and property are subject to all kinds of restraints and burdens in order to secure the general comfort, health, and prosperity of the state; and, when the power is exerted by the lawmaking body, it is not a judicial function to determine which one of two modes was likely to be the most effective for the protection of the public interest in view. That is a legislative inquiry, to be resolved in the light of all the information at hand. Judicial interference in this regard would constitute an invasion of the legislative function. Judicial interposition may be had only where there is no real or substantial relation between the legislative act and a valid public interest under the police power or the measure is, beyond all question, a palpable invasion of rights secured by the organic law. The expediency of the statute is for the lawmaking body alone. *Jacobson v. Massachusetts,* 197 *U. S.* 11, 25 *S. Ct.* 358, 49 *L. Ed.* 643 (1905); *Euclid v. Ambler Realty Co.,* 272 *U. S.* 365, 47 *S. Ct.* 114, 71 *L. Ed.* 303, 54 *A. L. R.* 1016 (1926); *Standard Oil Co. v. Marysville,* 279 *U. S.* 582, 49 *S. Ct.* 430, 73 *L. Ed.* 856 (1929). [at 194–195]

Here the legislative intent in the passage of the statute was to prevent highway accidents between motor vehicles in the highway and pedestrians standing therein soliciting a ride. It is clear that the right of the State to regulate its highways, for the protection and benefit of all its citizens is within its police power. The right to travel, although one of our most cherished liberties, is not absolute and must be considered in connection with the State's duty to promulgate measures directed towards the safe use of its highways. This right of the State was recognized by the United States Supreme Court in *Hendrick v. Maryland,* 235 *U. S.* 610, 35 *S. Ct.* 140, 59 *L. Ed.* 385 (1914) The Court noted:

In the absence of national legislation covering the subject, a state may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles . . . This is but an exercise of the police power uniformly recognized as belonging to the states and essential to the preservation of the health, safety and comfort of their citizens, and it does not constitute a direct and material burden on interstate commerce. [at 622, 35 S. Ct. at 142]

Therefore, since "the measure is directed to a matter of public concern," *i. e.,* traffic safety, "within the domain of the police power", *Reingold v. Harper, supra* at 194, it is not an impermissible infringement upon defendant's right to travel.

The court is not persuaded by defendant's argument that the statute is unconstitutional because it conditions the enjoyment of a fundamental right on suspect criteria. Any legislation aimed at the public's welfare is bound to affect individuals in varying degrees and to work a greater hardship on some than others. Defendant's argument focuses on his own economic plight, with which the court can sympathize, but it ignores the overall scope and direction of the statute. The ban on hitchhiking contained in *N. J. S. A.* 39:4–59 seeks to promote the orderly flow of traffic on the State's highways and also afford some protection to the hitch-

hiker. Some of the dangers confronting a hitchhiker were pointed out in a recent law review article:

The hitchhiker will meet automobile drivers who beg, borrow, or steal his spare change. . Some drivers terrorize the hitchhiker with their reckless driving; others swerve their cars to frighten him while he is standing along the road; and a rare few will even stop their car to accost. beat and sometimes kill the hitchhiker. [Spjut "The Hitchhiker's Thumb: A Cross-Country Ticket or the Omen of Criminality — The Constitutionality of the Washington Type Anti-Hitchhiking Law," 5 *U. S. F. L. Rev.* 330 (1971)]

Of course, the major concern of the Legislature in enacting the statute was to promote safety on its highways. The sudden stopping of cars to pick up a hitchhiker could result in rear-end collisions or a car swerving to avoid the car in front and colliding with an oncoming car or some obstruction on the side of the highway. There is always the possibility that the hitchhiker will be struck by an oncoming vehicle if he is standing too close to the roadway.

Having found the criteria upon which the statute is based to be the promotion of highway safety, this court cannot classify it as suspect. "The means are reasonable and appropriate to the end in view," *Reingold v. Harper, supra* at 194, and as such the statute is valid.

The court rejects defendant's argument that *N. J. S. A.* 39:4–59 is unconstitutional because of its breadth. The Legislature, when shaping the statute, had before it all the necessary information in order to determine how the interests of the public could best be served. Since the final decision of the Legislature was that highway safety could best be insured by banning hitchhiking on all highways in New Jersey, it is not for this court to interfere with its conclusions. As was pointed out in *Reingold v. Harper, supra*:

When the subject is comprehended in the police power of the State, "debatable questions as to reasonableness are not for the courts but for the Legislature, which is entitled to form its own judgment." *Sproles v. Binford*, 286 *U. S.* 374, 52 *S. Ct.* 581, 76 *L. Ed.* 1167 (1932). [at 194]

Defendant points out that both Connecticut and Washington revised their hitchhiking statutes which were similar to New Jersey's. The court notes that these actions were brought about by the legislatures of the respective states. Such must be the case in this State, for it is not a judicial function to determine which is the better method for bringing about the end in view. The revising of the statute to the form which defendant advocates is purely a legislative function because "the lawmaking body is the sole judge of what is adequate to meet the particular public requirement". *Reingold v. Harper, supra* at 194.

This court is of the opinion that the requirements of the statute are rationally related to the object of the legislation.

Where the end is one to which legislative power may properly be directed, it is enough "if it can be seen that in any degree, or under any reasonable conceivable circumstances, there is an actual relation between the means and the end." *Stephenson v. Binford,* 287 *U. S.* 251, 53 *S. Ct.* 181, 77 *L. Ed.* 288 (1932), [*Reingold v. Harper, supra* at 194.]

This court finds it reasonable to conclude that if a hitchhiker is standing off the highway (*i.e .,* the roadway and shoulder) he will not be obstructing the even flow of traffic, or likely to be struck by an oncoming car. This presumption seems to be reasonably related to the legislative goal of traffic safety. Defendant seeks to compare a bus with an automobile, since the statute permits soliciting a ride from a bus. What defendant fails to note, is that the purpose of a bus is for the pick-up and discharge of passengers. All motorists are, or should be prepared to stop. Such is not the case with an automobile, which might suddenly stop to pick-up a hitchhiker causing the unsuspecting motorist behind to have to swerve to avoid him, or perhaps to even ram into his rear end. The ban on hitchhiking is sufficiently related to the goal of highway safety to withstand defendant's constitutional challenge.

Therefore, for the reasons expressed in this opinion, *N. J. S. A.* 39:4–59 is found to be constitutional. Defendant is found guilty on each of the two counts of violation of *N. J. S. A.* 39:4–59, and the fine on each count is suspended with costs of $5 on each count.